THE HONORABLE ROBERT J. BRYAN
THE HONORABLE MARY ALICE THEILER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

DAVID RICE and ELIZABETH RICE,
individually and as a marital community; and
SETH DONAHUE, individually,

                                    Plaintiffs,

v.

CITY OF ROY, a Washington municipality;
CHRIS JOHNSON, individually; and
DARWIN ARMITAGE, individually

                                    Defendants.

NO. 3:20-cv-05223-RJB-MAT

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
November 6, 2020

*ORAL ARGUMENT REQUESTED*

[This page intentionally left blank.]

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1

## I.   **RELIEF REQUESTED**

2    In accordance with Fed. R. Civ. P. 56, defendants City of Roy, Police Chief Darwin Armitage,

3    and Police Officer Chris Johnson respectfully request that this Court dismiss plaintiffs' claims with

4    prejudice.  Plaintiff David Rice drove his utility terrain vehicle (UTV) recklessly through the City of

5    Roy, and, when Officer Johnson tried to stop him, Mr. Rice struck Officer Johnson with the UTV,

6    carrying Officer Johnson backwards and causing him to fear for his life.  Officer Johnson's decisions

7    to stop Mr. Rice and then to fire his weapon in self-defense were lawful and reasonable.

8

## II.   **STATEMENT OF FACTS**

9    **A.    The Evening of February 9, 2019 and Officer Johnson's Pursuit**

10    On February 9, 2019, Mr. Rice was living at his parents' house located at 8420 S. 307th St.,

11    just outside of Roy.  (Dep. of Rice, 11:13-12:14, attached to the Declaration of Ann E. Trivett as Ex.

12    A.)  Mr. Rice's nephew, Seth Donahue, also lived there.  (Dep. of Rice, 17:9-13; Dep. of Donahue,

13    9:24-10:15, attached to Trivett Decl. as Ex. B.)  The two spent the day doing chores, as there had been

14    a lot of snow.  (Dep. of Rice, 40:8-42:6; Dep. of Donahue, 49:18-24.)  Mr. Rice drank that afternoon,

15    having "maybe more than five" cans of Coors Light while at home.  (Dep. of Rice, 45:6-46:5.)  Mr.

16    Donahue drank between six and ten beers that afternoon.  (Dep. of Donahue, 52:13-53:16; 113:7-19.)

17    At some point that evening, Mr. Rice went for a ride in his 2013 Polaris with Mr. Donahue as

18    passenger.  (Dep. of Rice, 49:8-50:16, Ex. 1; 44:20-45:2; 52:3-18; Dep. of Donahue, 51:17-52:8.)  It

19    has a standard set of headlights and bright lights above the winch for nighttime driving.  (Dep. of

20    Rice, 51:10-52:2.)  There was between 12 and 16 inches of snow, with compact snow on the roads.

21    (*Id*., 66:12-16; Dep. of Donahue, 51:14-16.)  After riding around, they went to a corner store in nearby

22    McKenna, bought beer, then went to Walt's Tavern.  (Dep. of Rice, 52:8-57:14; Correction Sheet;

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Dep. of Donahue, 57:9-60:8.; 62:9-63:3.)  After having one or two beers at Walt's, they stopped to

2   have some more beer.  (Dep. of Rice, 52:8-57:14; 94:7-12; Dep. of Donahue, 60:18-23; 62:19-64:15.)

3          Because they forgot to buy chewing tobacco earlier that night, Mr. Rice and Mr. Donahue

4   decided to drive the UTV to a gas station located at the intersection of McNaught and Higgins Greig

5   Road in Roy.  (Dep. of Rice, 61:11-62:4; Dep. of Donahue, 62:11-64:20; Johnson Decl., ¶ 11.)  They

6   drove north on the railroad tracks, then traveled north up McNaught to the Chevron.  (Dep. of Rice,

7   88:10-89:8; Exs. 9 and 7; Dep. of Donahue, 64:17-65:4.)  The gas station was closed, so they drove

8   by, "whipped around a bunch" in the snow, then headed back home by driving south to 288th and

9   getting back on the train tracks.  (Dep. of Rice, 62:3-63:19; Dep. of Donahue, 65:21-66:5.)  They

10  testified that, after leaving the gas station eastbound, they traveled north towards 2nd Street, took a

11  left on 2nd, took a left at McNaught, and took a right on 3rd Street or Higgins Greig Road, completing

12  that loop a second time before traveling back down McNaught to 288th, and then back onto the

13  railroad tracks heading south.  (Dep. of Rice, 90:2-92:5; Exs. 7 and 8; Dep. of Donahue, 123:1-124:21,

14  Exs. 9 and 11.)

15         However, Chevron video footage shows that plaintiffs' testimony is inaccurate.  After driving

16  by the Chevron and looping back onto McNaught the first time, Mr. Rice continued driving down

17  McNaught past the Chevron at approximately 41 mph.  (Johnson Decl., Ex. A, p. 1; Neale Decl., Ex.

18  A, p. 10.)  Mr. Rice returned to the Chevron about a minute and a half later, took a right onto Higgins

19  Greig Road, made another loop, then drove south on McNaught at about 28 mph.  (Johnson Decl., ¶¶

20  12-14; Trivett Decl. Ex. C; Neale Decl., Ex. A., p. 10.)  At that at one point, Officer Johnson's vehicle

21  was only 57 feet away from the UTV with emergency lights activated.  (Neale Decl., Ex. A., p. 10.)

22

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 3

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    Mr. Rice conceded he may have failed to come to a complete stop at stop signs.  (Dep. of

2    Rice, 64:13-65:1;70:13-25.)  Mr. Donahue does not believe Mr. Rice failed to stop at any stop signs,

3    but he is only aware of one in Roy.  (Dep. of Donahue, 66:23-67:24.)  In fact, there are many stop

4    signs located within the City of Roy, including one facing west at the intersection of Higgins Greig

5    Road and Peterson and one facing east at the intersection of 2nd and McNaught, both on Mr. Rice's

6    route.  (Johnson Decl., ¶ 18; Dep. of Rice, 90:2-92:5; Exs. 7 and 8; Dep. of Donahue, 123:1-124:21,

7    Exs. 9 and 11.)  While Mr. Rice and Mr. Donahue were driving around the City, they were in two-

8    wheel drive "drifting around these corners" and losing traction, with the throttle "pinned."  (Dep. of

9    Donahue, 64:21-65:20; Dep. of Rice, 66:23-67:9.)  This caused the UTV to go sideways.  (Dep. of

10   Donahue, 64:21-65:20.)  They were "flying" on the railroad tracks and driving with the engine super

11   loud, because they had it "to the max in two-wheel drive plowing through the snow."  (Dep. of

12   Donahue, 66:6-18; Dep. of Rice, 64:13-65:1.)  When Mr. Rice got back to the railroad tracks, he

13   turned onto them "fast."  (Dep. of Donahue, 89:9-15.)  Mr. Rice and Mr. Donahue thought they drove

14   with only one or two of the driver's side wheels inside the tracks, but video footage demonstrates they

15   most likely had only the rear passenger tire outside the tracks.  (Dep. of Rice, 73:13-74:11; Dep. of

16   Donahue, 70:22-71:10; Neale Decl., Ex. A, p. 14-22.)  All of the UTV lights were on.  (Dep. of Rice,

17   74:16-75:14.)

18       Meanwhile, Officer Johnson was on duty, wearing his department-issued jumpsuit and

19   driving his fully marked police SUV.  (Johnson Decl., Ex. A, p. 1.)  At about 9:30 p.m., he was on

20   patrol on Huggins Greig Road, heading east toward McNaught.  (Id.)  He observed an off-road vehicle

21   also traveling eastbound on Huggins Greig Road toward Peterson.  (Id.)  It turned north onto Peterson,

22   sliding sideways.  (Id. at p. 2.)  This was a residential area, and Officer Johnson had seen people

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 4

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

sledding down the hill on Peterson numerous times that evening. (*Id*.) He pulled his patrol car behind the UTV and activated his emergency lights and siren. (*Id*.) The UTV did not slow down. (*Id*.) Instead, the driver approach McNaught and turn left, failing to stop for the stop sign. (*Id*.)

At about 9:33 p.m., Officer Johnson contacted police dispatch to notify them of his attempt to stop the UTV. (Johnson Decl., ¶¶ 9 and 10, Ex. E, SS 306; Ex. F.) With lights and siren activated, Officer Johnson continued to follow the UTV. (Johnson Decl., Ex. A, p. 2.) Given the snow and icy conditions, Officer Johnson did not believe it was safe for the UTV to be driving so fast. (*Id*. at p. 3.) Officer Johnson's emergency sirens can be heard in the background of many of his radio communications with dispatch. (*Id*., Ex. E, SS 310-315.) Mr. Rice and Mr. Donahue claim they did not hear any police sirens, see any police lights, or know there was a police officer following them, but video and audio evidence show that Officer Johnson had his emergency sirens activated and, at one point, he was only 57 feet behind them with his emergency lights flashing. (Dep. of Rice, 63:23-64:12; Dep. of Donahue, 71:11-73:9; Neale Decl., Ex. A, p. 10; Johnson Decl. Ex. E, SS 310, SS313-315.) Officer Johnson continued pursuit of the UTV until the driver turned right onto 288th and then right again heading south on the railroad tracks. (Johnson Decl., Ex A, p. 3.) Street vehicles are not permitted on railroad tracks. (RCW 46.09.450.)

**B.    The February 9, 2019 Shooting**

Officer Johnson headed back to McNaught. (Johnson Decl., Ex. A, p. 3.) He saw cars that had pulled off the highway, unable to make it up a nearby hill. (*Id*.) He also saw people standing outside their vehicles. (*Id*.) He did not see the UTV, so he continued toward 295th Street. (*Id*.) As he headed south, he could see the lights on the UTV as it traveled south on the railroad tracks toward 295th Street. (*Id*.) Officer Johnson parked just west of the railroad tracks. (*Id*.) He turned off his

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   vehicle lights and waited for the UTV to approach. (*Id*.) He also activated his vehicle's spotlight and

2   directed it toward the tracks and the approaching UTV. (*Id*.) He walked down the tracks and stood

3   on the tracks with his firearm drawn and his flashlight pointing toward the UTV. (*Id*.) He believed

4   the people in the UTV would be able to see him and his police car because of their own headlights

5   and the spotlight on his police car, backlighting him. (Dep. of Johnson, 48:23-49:2, attached to Trivett

6   Decl. as Ex. D.) He also believed that, because of the earlier pursuit, they would know he was a police

7   officer and wanted them to come to a stop. (*Id*. at 46:21-47:1.) As the UTV got closer, Officer

8   Johnson yelled as loudly as he could, "Stop Police" three times. (Johnson Decl., Ex. A, p. 4.)

9   The UTV did not appear to slow down or stop, so Officer Johnson attempted to move off the

10   tracks to avoid being struck. (Johnson Decl., Ex. A, p. 4.) However, he was not able to move in time.

11   (*Id*.) The front passenger side of the UTV struck Officer Johnson. (*Id*.) Both his feet left the ground,

12   and for a moment or two, he was stuck on the front side of the UTV as it moved forward. (*Id*.) He

13   could see both Mr. Rice and his passenger, plaintiff Seth Donahue. (*Id*.)

14   Officer Johnson feared for his life. (Johnson Decl., Ex. A, p. 4.) He believed he was about

15   to be run over by the UTV. (*Id*.) He brought his firearm in close to his body on his right side and

16   fired four rounds towards the driver's side of the UTV. (*Id*.) As this was happening, his body was

17   sliding down the passenger side of the UTV. (*Id*.) The right rear tire struck him before he hit the

18   ground. (*Id*.) At 9:39 p.m., Officer Johnson reported over his police radio, "[unintelligible, shots

19   fired, shots fired!" (*Id*., Ex. E, SS 322.) When dispatched asked if he was okay, Officer Johnson

20   replied, "I'm fine … he just about took me out." (*Id*., Ex. E, SS 324, SS325.) He also said, "He tried

21   to hit me with the vehicle … he actually succeeded." (*Id*., Ex. E, SS 327.) Two bullets went through

22

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 6

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  the front windshield of the UTV and two more went through the passenger side window.  (Neale

2  Decl., Ex. A, p. 6.)  One bullet apparently exited through the lower side of the driver's side door.  (*Id*.)

3        Mr. Rice testified he was traveling down the tracks when he suddenly saw a bright light.  (Dep.

4  of Rice, 75:20-76:25.)  He let off the gas but did not apply his brakes.  (*Id*.)  Seconds later, he saw a

5  car parked nearby and somebody "coming straight at them," either on the train tracks or right beside

6  them.  (Dep. of Rice, 75:20-78:8; 115:2-116:4.)  A split second later, he realized he had been shot.

7  (Dep. of Rice, 78:24-79:9.)  Mr. Donahue saw a spotlight blinding him and a reflection of an SUV;

8  within 10 seconds, he heard gunfire and saw "yellow, flaming lights."  (Dep. of Donahue, 76:13-25;

9  79:20-22; Correction Sheet.)  Plaintiffs do not know where Officer Johnson was when he fired.  (Dep.

10  of Rice, 75:20-78:8; 115:2-116:4; Dep. of Donahue, 76:13-25; 79:23-24; 80:21-24.)  Mr. Donahue

11  had a beer can in his hand when he was shot.  (Dep. of Donahue, 68:6-69:6; Johnson Decl., Ex. A., p.

12  4.)  Mr. Donahue also testified that, upon seeing the SUV, there was enough time to stop, and that if

13  he wanted his uncle to stop, he could have gotten his attention.  (Dep. of Donahue, 79:4-19; 138:4-

14  139:1.)

15        Mr. Rice does not know, one way or the other, whether his UTV struck Officer Johnson during

16  this encounter.  (Dep. of Rice, 81:4-12.)  Mr. Donahue does not believe the UTV hit Officer Johnson,

17  because, despite it being hard to see out of the foggy windshield; he did not observe a person before

18  he was shot; he did not observe anything obstruct his vision; and he did not feel the UTV impact a

19  person.  (Dep. of Donahue, 79:25-80:20; 119:14-121:5.)  However, video evidence conclusively

20  proves Mr. Rice struck Officer Johnson with the UTV on February 9, 2019.[1]

21

22  [1] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 7

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

**C.     Security Camera Video Footage**

The defense retained accident reconstructionist and visualization expert William Neale to analyze the video footage Pierce County recovered from the Chevron gas station and from a neighbor with home surveillance footage of the incident on the train tracks.  (See Neale Decl., Ex. A.)  By utilizing the surveillance footage and 3D scanning, Mr. Neale was able to enhance and analyze the surveillance footage to determine and identify the following information contained there:

- Officer Johnson parks his SUV, turns his spotlight on, points it towards the railroad tracks, then walks onto the railroad tracks, leaning forward with his gun drawn;
- The UTV travels south down the tracks at about 8 mph with the rear passenger wheel outside the tracks;
- Without slowing down, the front passenger side of the UTV strikes Officer Johnson while he is still leaning forward towards it and with one leg extended backwards.
- The UTV lifted and carried Officer Johnson's body backwards along with it for about 9 feet in a 1-second time period (at a speed of about 6 mph), until he fell to the ground.

(Neale Decl., Ex. A, pp. 5-22.)

**D.     Events After the February 9, 2019 Shooting**

Mr. Rice was shot in his right shoulder and his left groin.  (Dep. of Rice, 94:19-95:5.)  Mr. Donahue was shot in his right hand.  (Dep. of Donahue, 91:11-12; 132:14-17.)  After he was shot, Mr. Rice turned right, got back to the highway, and headed south.  (Dep. of Rice, 83:19-84:5.)  It was difficult for Mr. Rice to drive, so he brought his UTV to a stop.  (Dep. of Rice, 84:22-85:7; Dep. of Donahue, 91:18-92:6.)  Meanwhile, Officer Johnson notified dispatch of the shooting, returned to his car, turned on his lights and siren, and followed the UTV.  (Johnson Decl., Ex. A, p. 4.)  At about 9:42 p.m., he stopped by the UTV and ordered the plaintiffs at gunpoint to exit the vehicle.  (Dep. of Rice, 95:20-96:4; Dep. of Donahue, 91:18-93:4; Johnson Decl., Ex. A , p. 5; Ex. F, p. 3.)  Mr. Donahue got out of the vehicle and onto the ground, but Mr. Rice could not.  (Dep. of Rice, 96:2-14; Dep. of

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 8

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Donahue, 92:7-93:4.)

2          According to the CAD, Pierce County Deputies began arriving at about 9:52 p.m. and can

3   first be heard over the radio at approximately 9:55 p.m.  (Johnson Decl., Ex. F, p. 3 and Ex. E, SS

4   435-436.)  Officer Johnson did not have any further contact with Mr. Rice or Mr. Donahue.  (Dep. of

5   Rice, 99:3-100:1; 103:11-13; Dep. of Donahue, 92:4-93:10; 94:1-94:11; 100:8-101:10; Johnson

6   Decl., ¶ 8.)  Chief Armitage also arrived at the scene, but he did not have any interaction with Mr.

7   Rice or Mr. Donahue.  (Declaration of Chief Darwin Armitage, ¶ 3; Dep. of Rice, 37:24-38:9; 103:14-

8   15; Dep. of Donahue, 45:25-46:9.)  Neither Officer Johnson nor any other law enforcement officer

9   arrested Mr. Rice or Mr. Donahue for any criminal conduct arising out of the February 9, 2019 event.

10  (Dep. of Rice, 100:2-101:8; 102:16-22; 106:20-107:15; Dep. of Donahue, 102:14-22.)  Defendants

11  are not aware of anyone handcuffing either plaintiff, arresting either plaintiff, providing either plaintiff

12  with *Miranda* rights, or filing any criminal charges against either plaintiff.  (Johnson Decl., ¶ 8;

13  Armitage Decl., ¶ 3.)

14  **E.     Plaintiffs' Complaint**

15         Plaintiffs each assert the following causes of action against each of the three defendants: (1)

16  a fourth amendment unreasonable seizure/false arrest claim under 42 U.S.C. § 1983; (2) a Fourth

17  amendment excessive force claim under 42 U.S.C. § 1983; (3) a Fourteenth amendment claim under

18  42 U.S.C. § 1983; (4) a state law false arrest claim; (5) a state law battery claim; (6) a state law

19  intentional infliction of emotional distress claim; and (7) a loss of consortium claim.

20                          **III.     ISSUES PRESENTED**

21         1.      Should the Court dismiss each of plaintiffs' claims, because there is no genuine issue

22  of material fact to support them?

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

2.      Should the Court grant Officer Johnson qualified immunity?

## IV.      EVIDENCE RELIED UPON

Defendants rely upon the pleadings already on record, along with the Declarations of Christopher Johnson, Darwin Armitage, William Neale, and Ann E. Trivett, filed herewith.

## V.      ARGUMENT AND AUTHORITIES

### A.      Summary Judgment Standard.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude the entry of judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quoting former Fed. R. Civ. P. 56(c)).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

### B.      The Court Should Dismiss Plaintiffs' § 1983 Unreasonable Seizure/False Arrest Claims.

### *1.      42 U.S.C. § 1983 and Plaintiffs' Unreasonable Seizure/False Arrest Claims*

To sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (1) that he suffered a violation of his rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908 (1981); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 10

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Cir. 1991).  Officer Johnson was acting under color of law during the February 9, 2019 events at

2   issue.  Plaintiffs must therefore show he somehow violated their constitutional rights.

3           **2.**      ***Mr. Rice's Unreasonable Seizure/False Arrest Claim***

4          In order to establish a § 1983 false arrest claim, plaintiffs must show they were arrested

5   without probable cause.  *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964-65 (9th

6   Cir. 2001)*.*  Probable cause exists when the totality of the circumstances within an officer's

7   knowledge would cause a reasonably prudent person to believe that a crime has been, or is

8   currently, being committed.  *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).

9   Probable cause is measured at the moment of arrest, and the subjective intent of the arresting

10   officer is irrelevant.  *See United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005); *U.S. v.*

11   *Ramirez*, 473 F.3d 1026, 1030-31 (9th Cir. 2007).  Even if an officer lacked probable cause to

12   arrest a suspect for one stated reason, so long as there was probable cause for some other criminal

13   offense, the arrest is lawful.  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1207 (9th Cir. 2008).

14   Further, when an officer has probable cause to believe a person committed even a minor crime in

15   his presence, the arrest is constitutionally reasonable.  *Virginia v. Moore*, 553 U.S. 164. 171, 128

16   S. Ct. 1598 (2008); see also RCW 10.31.100(1) & (3) (police generally have authority to arrest

17   without a warrant if there is probable cause to believe the person committed or is committing a

18   felony or if the person committed a misdemeanor in the officer's presence; and police officer may

19   arrest without a warrant if there is probable cause to believe the person committed or is committing

20   certain traffic offenses, including RCWs 46.52.020, 46.61.500, 46.61.502, and 46.61.5249).

21          A law enforcement officer may briefly detain an individual for an investigatory detention,

22   consistent with the Fourth Amendment, if the law enforcement officer has reasonable suspicion that

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 11

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  criminal activity may be afoot. *United States v. Orman*, 486 F.3d 1170, 1173, (9th Cir. 2007); *Terry*

2  *v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868 (1968).   An investigatory detention is a narrowly drawn

3  exception to the probable cause requirement, allowing police to stop an individual reasonably

4  suspected of criminal activity, ask a moderate number of questions, and perform a limited pat-down

5  frisk for weapons. *Terry*, 392 U.S. at 22-26; *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S. Ct.

6  3138 (1984). To determine whether reasonable suspicion exists, the court considers the totality of the

7  circumstances surrounding the detention. *Unites States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir.

8  2010). "Reasonable suspicion is formed by specific, articulable facts which, together with objective

9  and reasonable inferences, form the basis for suspecting that the particular person detained is engaged

10  in criminal activity." *Id*. Additionally, there is no rigid time limitation on investigatory detentions.

11  *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568 (1985).

12
13  > While it is clear that the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion, we have emphasized the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes.
14
15

16  *Id*. (internal citations omitted). A traffic stop is typically characterized as a "Terry stop," as opposed

17  to a formal arrest, because a person so detained is not "in custody." *Berkemer*, 468 U.S. at 439-40.

18          There is no bright line rule for determining when an investigatory stop evolves into an arrest.

19  *Gallegos v. City of Los Angeles*, 308 F.3d 987, 991 (9th Cir. 2002). Rather, this is a fact-specific

20  inquiry, guided by the general Fourth Amendment requirement of reasonableness and an examination

21  of all the circumstances surrounding the encounter.   *Id*.   An investigative detention does not

22  automatically become an arrest when officers draw their guns, use handcuffs, or place a suspect in the

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 12

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  back of a patrol car.  *Id*.  The question is whether the detention was reasonable and designed to allow

2  the officers to investigate the possible criminal activity.  *Id*. at 991-92.

3          There was nothing unlawful about Officer Johnson's decision to attempt to bring the UTV

4  to a stop and investigate possible criminal activity, either before or after the shooting.  Officer

5  Johnson had reasonable suspicion and probable cause to believe Mr. Rice had committed criminal

6  trespass in violation of RCW 9A.52.080 for knowingly entering and remaining upon the private

7  property owned by the railroad company.  By driving down the railroad tracks, Mr. Rice also

8  violated RCW 46.09.450, which does not authorize off-road vehicles on railroad tracks and does

9  not authorize trespass on private property.  Moreover, Officer Johnson developed reasonable

10  suspicion and probable cause to believe Mr. Rice violated RCW 46.09.480 for operating a non-

11  highway vehicle in such a way as to endanger human life; RCW 46.61.024 for willfully failing to

12  stop or drive recklessly while attempting to elude a police vehicle; RCW 46.61.500, for recklessly

13  driving the UTV; and RCW 46.61.022 for failing to stop when requested or signaled to do so by a

14  police officer.  Officer Johnson also had a reasonable suspicion that Mr. Rice was driving under

15  the influence in violation of RCW 46.61.502 and RCW 46.09.470(2) and/or that he was driving

16  negligently in violation of RCW 46.61.5249 or RCW 46.61.525.  This suspicion was only

17  enhanced when Officer Johnson observed Mr. Donahue holding a beer can while they drove down

18  the tracks.  Finally, Officer Johnson witnessed numerous traffic infractions that also justified a

19  traffic stop.  See, e.g., RCW 46.61.050 (obedience to traffic control devices); RCW 46.61.305

20  (when signals required); RCW 46.61.400 (speeding); RCW 46.61.445 (due care required).

21          Officer Johnson was not successful at stopping Mr. Rice or Mr. Donahue on the railroad

22  tracks, and therefore no seizure occurred there.  *See California v. Hodari D.*, 499 U.S. 621, 626,

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 13

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

111 S. Ct. 1547 (1991) (suspect who continues to flee from officer commanding them to stop has not been seized).  However, by the time Officer Johnson ordered plaintiffs out of the UTV, there were even more legal bases for the stop.  Officer Johnson had reasonable suspicion and probable cause to believe Mr. Rice had either committed assault in the first degree in violation of RCW 9A.36.011; assault in the second degree in violation of RCW 9A.36.021; assault in the third degree in violation of RCW 9A.36.031(g); and/or hit and run in violation of RCW 46.52.020.  There was nothing about Officer Johnsons' stop or detention of Mr. Rice that was unlawful, and when back-up officers arrived, his limited detention of Mr. Rice ceased.  Officer Johnson did not arrest Mr. Rice, nor did any other law enforcement officer did so.

### 3.    Mr. Donahue's Unreasonable Seizure/False Arrest Claim

It was also lawful for Officer Johnson to detain the passenger, Mr. Donahue, while back-up officers could arrive and investigate possible criminal activity.  When a vehicle is stopped by law enforcement, all of its occupants are "seized" for Fourth Amendment purposes.  *US. v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009).  In determining whether such a seizure comports with the Fourth Amendment, the touchstone is reasonableness.  *Id*.  For officer safety, police may order a passenger out of a vehicle during a routine traffic stop.  *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1326-27 (9th Cir. 1995).  An officer may also point a gun at the passenger of a vehicle, force him to lie on the ground, handcuff him, and detain him despite the passenger's cooperation if a fellow passenger in the vehicle was combative and refused to adhere to a police officer's instructions.  *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995); s*ee also Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002) (ordering suspect from car, handcuffing him, transporting him back to scene, and holding him for 45 minutes did not constitute

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 14

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1  an unreasonable investigatory stop).  Police officers face an inordinate risk when confronting

2  people seated inside a vehicle, they are entitled to employ reasonable methods to protect

3  themselves and others in potentially dangerous situations, and they may make protective searches

4  based on a reasonable belief that a suspect poses a danger.  *Pennsylvania v. Mimms*, 434 U.S. 106

5  110; *Allen*, 66 F.3d at 1056; *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469 (1983).

6  "Polices officer also need not avail themselves of the least intrusive means of responding to an

7  exigent situation."  *Id*. at 1057 (internal citation omitted).

8      Officer Johnson's command to Mr. Donahue to exit the vehicle and get onto the ground

9  until backup officers arrived was objectively reasonable.  Officer Johnson's contact with Mr.

10  Donahue then ended.  Neither Officer Johnson nor any other law enforcement officer arrested Mr.

11  Donahue, and even if they had, there was probable cause to believe he had aided or abetted Mr.

12  Rice in commission of a crime.  See RCW 9A.08.020; RCW 46.64.050.  *See also Allen*, 66 F.3d

13  1052 (analogous facts supporting lawful *Terry* stop).

14  **C.      The Court Should Dismiss Plaintiffs' § 1983 Excessive Force Claims.**

15      The standard for analyzing excessive force claims was established in *Graham v. Connor*,

16  490 U.S. 386, 396, 109 S. Ct. 1865 (1989).  Excessive force claims are evaluated under the Fourth

17  Amendment's reasonableness standard, and the court considers (1) the severity of the crime at

18  issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and

19  (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Smith v. City of*

20  *Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  The Ninth Circuit also considers the availability of

21  alternative methods of capturing or subduing a suspect.  *Smith*, 394 F.3d at 703.

22      Reasonableness is assessed from the perspective of an objectively reasonable officer on the

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 15

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.  Where an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tenn. v. Garner*, 471 U.S. 1, 10, 105 S. Ct. 1694 (1985).  The critical inquiry is what the police officer perceived.  *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010).  Officers are not required to use the least intrusive degree of force possible.  *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994).

"[I]t is undisputed that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon." *United States v. Anchrum*, 590 F.3d 795, 801 (9th Cir. 2009) (citing *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987)).  Courts have held that it is constitutional for law enforcement officers to use deadly force when faced with the threat of harm posed by an individual in an automobile.  *Wilkinson*, 610 F.3d 546 (no constitutional violation when officer shot driver of van that failed to obey police commands to stop vehicle, as he accelerated around a muddy yard within 9 seconds of a PIT maneuver); *Whitaker v. Puma County*, 640 F.Supp.2d 1095, 1104 (D. Ariz. 2009) (no constitutional violation where officers shot driver of stolen vehicle accelerating around parking lot near officers); *Waterman v. Batton*, 393 F.3d 471, 478 (4th Cir. 2005) (granting qualified immunity where officers were faced with a suspect well positioned to seriously injure or kill them with his vehicle - possibly within a fraction of a second - if they did not employ deadly force); *Scott v. Edinburg*, 346 F.3d 752, 757-58 (7th Cir. 2003) (officer acted reasonably in shooting driver who had stolen his vehicle, put it in reverse towards

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 16

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    off-duty officer, and accelerated towards others in parking lot); *Pace v. Capobianco*, 283 F.3d

2    1275, 1277-78, 1281 (11th Cir. 2002) (officers entitled to qualified immunity when they shot and

3    killed suspect after suspect led police officers on high speed chase and failed to leave his vehicle

4    or turn off his engine when cornered); *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993) (trooper

5    acted reasonably in shooting because driver forced others cars off the road and attempted to ram

6    another officer); *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992) (officer reasonably shot driver to

7    stop vehicle from injuring others).  Additionally, "[I]f police officers are justified in firing at a

8    suspect in order to end a severe threat to public safety, the officers need not stop shooting until the

9    threat has ended." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2022 (2014).  "[I]f lethal force is justified,

10   officers are taught to keep shooting until the threat is over." *Id.*

11          Here, minutes after the police pursuit, Mr. Rice hit Officer Johnson with his UTV, picking

12   Officer Johnson's body up off the ground and carrying him backward.  An objective police officer

13   who finds himself in this position would reasonably believe he was about to be run over, posing a

14   threat of serious bodily harm or death.  His decision to fire his weapon in self-defense was justified.

15          Any arguments plaintiffs may present about whether Officer Johnson's actions were

16   reasonable leading up to the moment he was struck by the UTV are immaterial.  The Supreme

17   Court abolished the Ninth Circuit's "provocation rule," which allowed a plaintiff to assert a Fourth

18   Amendment claim against a police officer for an otherwise reasonable use of force if the officer

19   intentionally or recklessly provoked the confrontation and the provocation was an independent

20   Fourth Amendment violation.  *County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539 (2017).

21   **D.      Officer Johnson Is Entitled to Qualified Immunity.**

22          Officer Johnson is also entitled to qualified immunity, which shields state officials from

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

civil lawsuits unless the plaintiff can show (1) the official violated a statutory or constitutional right, and, if so, (2) the right at issue was "clearly established" at the time of the challenged conduct such that it would have been clear to every reasonable officer that his conduct was unlawful in that situation.  *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151 (2001), *abrogated, in part, by Pearson v. Callahan*, 129 S. Ct. 808 (2009) (not always necessary to first determine whether a constitutional violation occurred); *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011). A right is clearly established if the contours of the right are sufficiently clear that every reasonable officer would understand what he is doing violates that right.  *Id*.  The focus is whether the officer had fair notice that his conduct was unlawful.  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). This requires existing precedent to have placed the constitutional question beyond debate.  *Id*.

> [C]learly established law should not be defined at a high level of generality. As this Court explained decades ago, the clearly established law must be "particularized" to the facts of the case. Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal cites omitted).

> Specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.

*Kisela*, 138 S. Ct. at 1152-53 (internal cites omitted).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft*, 563 U.S. at 743 (quoting

1  *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).  Qualified immunity is effectively

2  lost if a case is erroneously permitted to go to trial, and qualified immunity questions should be

3  resolved at the earliest possible stage of litigation.  *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 646

4  n.6, 107 S. Ct. 3034 (1987).  Given the litany of analogous cases cited above, it would not be clear

5  to every officer that deadly force was an unreasonable means of self-defense.  In the absence of a

6  case suggesting it is unreasonable for officers to fire their weapons when they are being struck and

7  potentially run-over by a vehicle, Officer Johnson is entitled to qualified immunity.

8  **E.**    **The Court Should Dismiss Plaintiffs' § 1983 Claims Asserted Against the City of Roy.**

9           A municipality cannot be held liable under 42 U.S.C. § 1983 solely because it employs a

10  tortfeasor.  *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692, 98 S. Ct. 2018 (1978).

11  Instead, a plaintiff must prove the municipality had a deliberate policy, custom, or practice that

12  was the moving force behind the constitutional violation suffered.  *Gravelet-Blondin v. Shelton*,

13  728 F.3d 1086, 1096 (9th Cir. 2013).   To do so, a plaintiff must establish that the alleged

14  unconstitutional action was either the result of an unconstitutional custom or policy; the result of

15  a deliberate indifference to a known need to train; or ratified by the City's chief policymaker.

16  *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010); *Hopper v. City of*

17  *Pasco*, 241 F.3d 1067, 1083 (9th Cir. 2001).  The policy must be the proximate cause of the § 1983

18  injury.  *Van Ort v. Estate of Stanewick*, 92 F.3d 831, 837 (9th Cir. 1996).  Additionally, "[a] pattern

19  of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate

20  deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 131 S. Ct. 1350,

21  1359-60 (2011) (internal citations omitted).  Absent a constitutional violation, there can be no §

22  1983 municipal liability.  *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996).  Under

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 19

**Christie Law Group, PLLC**
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
206-957-9669

1  a ratification theory, a plaintiff must demonstrate that "an official with final policy-making

2  authority ratified a subordinate's unconstitutional action or decision and the basis for it." *Hopper*,

3  241 F.3d at 1083. "[R]atification requires, among other things, knowledge of the alleged

4  constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). Merely affirming

5  a finding that a particular use of force was "within policy" does not constitute ratification. *See*

6  *Dunklin v. Mallinger*, 2013 U.S. Dist. LEXIS 51871, *94-95 (N.D. Cal. 2013).

7      The law does not say that, whenever an investigative group accepts an officer's
       version over a victim's differing version, this acceptance establishes a policy for
8      which a municipality may be held liable under § 1983. If that were the law, counties
       might as well never conduct internal investigations and might as well always admit
9      liability. But that is not the law. The law clearly requires "something more."

10  *Kanae v. Hodson*, 294 F.Supp.2d 1179, 1188 (D. Hawaii 2003).

11      As a threshold matter, plaintiffs failed to adequately plead a 42 U.S.C. § 1983 *Monell* claim

12  against the City of Roy. "*Monell* allegations must identify the challenged policy, custom, or failure

13  to train, explain why it is deficient, and state how it harmed plaintiff. Where a claim is based on a

14  failure to train, the complaint must also plead facts showing that the municipality's conduct

15  amounted to deliberate indifference." *Lopez v. Cty. of Los Angeles*, 2015 WL 3913263, *7 (C.D.

16  Cal. 2015); *McFarland v. City of Clovis,* No. 1:15-CV-1530 AWI SMS, 2016 WL 632663, at *2

17  (E.D. Cal. Feb. 17, 2016) (citing *Young v. City of Visalia,* 687 F. Supp. 2d 1141, 1149-50 (E.D.

18  Cal. 2009)). Plaintiffs do not identify any particular policy, custom, or training issue that they

19  believe proximately caused any constitutional violation, nor do they articulate how the City or

20  Chief Armitage ratified any unconstitutional conduct. Even so, Officer Johnson did not violate

21  plaintiffs' constitutional rights, nor is there evidence to support a *Monell* claim under any theory.

22

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   **F.    All of Plaintiffs' State Law Claims are Barred by RCW 4.24.420**

2          It is a complete defense to any action for damages for personal injury that the person injured

3   was engaged in the commission of a felony at the time of the occurrence causing the injury and

4   the felony was a proximate cause of the injury.  RCW 4.24.420.  The statute applies even if the

5   defendant was negligent or unreasonable."  *Davis v. King County*, 79696-8-1, 2020 WL 5117968,

6   at *1 (Wash. Ct. App. Aug. 31, 2020).  It does not require a felony conviction or admission to

7   felonious conduct; it requires proof the person injured was "<u>engaged in the commission of a</u>

8   <u>felony</u>."  *Id*. at * 5.  The video evidence shows that, when Officer Johnson fired his weapon, Mr.

9   Rice was violating RCW 46.61.024 by willfully refusing to bring his UTV to a stop and driving

10  the UTV in a reckless manner while attempting to elude a pursuing police vehicle.  *See State v.*

11  *Pittman*, 185 Wn. App. 614, 341 P.3d 1024 (2015) (element of felony eluding).  Even if plaintiffs

12  did not see Officer Johnson in the seconds before striking him, only minutes before, video and

13  audio recordings prove they were speeding away from Officer Johnson's police car, with Officer

14  Johnson following closely behind with lights and sirens activated.  No jury could conclude they

15  did not know they were eluding police.  Moreover, right before striking Officer Johnson, Mr. Rice

16  saw a car parked nearby and somebody "coming straight at them," Mr. Donahue saw the SUV, and

17  they both saw the spotlight directed at them.  Mr. Rice did not slow down or attempt to stop.  The

18  plaintiffs' felonious conduct was a proximate cause of Officer Johnson's attempt to stop them on

19  the tracks and his need to fire his weapon in self-defense, barring Mr. Rice's negligence claim.

20  Mr. Donahue's negligence claim is similarly barred, because he was an accomplice to this felony

21  by encouraging and aiding his uncle's attempt to elude the police.  RCW 9A.08.020.

22

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    **G.    The Court Should Dismiss Plaintiffs' State Law False Arrest Claims.**

2         The gist of an action for false arrest "is the unlawful violation of a person's right of personal

3    liberty or the restraint of that person without legal authority."  *Bender v. City of Seattle*, 99 Wn.2d

4    582, 591, 664 P.2d 492 (1983).  Probable cause is a complete defense to an action for false arrest.

5    *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563, 852 P.2d 295 (1993).  "Probable cause exists

6    where the facts and circumstances within the arresting officer's knowledge and of which he has

7    reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable

8    caution in a belief that an offense has been or is being committed."  *State v. Gluck*, 83 Wn.2d 424,

9    426-27, 518 P.2d 703 (1974).  The Court should dismiss plaintiffs' false arrest claims because they

10   were not arrested.  Even if they were, an arrest would have been supported by probable cause.

11   **H.    The Court Should Dismiss Plaintiff's State Law Battery Claims.**

12        Battery is the intentional infliction of a harmful bodily contact.  *Garratt v. Dailey*, 46

13   Wn.2d 197, 200, 279 P.2d 1091 (1955).  The act must be done with the intention of bringing about

14   a harmful or offensive contact or the apprehension thereof, the contact must not be consensual,

15   and the conduct must not be otherwise privileged.  *Id*. at 200-01.  Under RCW 10.31.050, law

16   enforcement officers are authorized to use all necessary force to affect an arrest if, after notice of

17   the intention to arrest an individual, that individual either flees or forcibly resists.  Officer Johnson

18   is also entitled to use any reasonable means to protect himself from imminent danger of a violent

19   crime.  RCW 9A.16.110.  The Court should dismiss plaintiffs' battery claims.

20   **I.     The Court Should Dismiss Plaintiff's State Law Outrage Claims.**

21        The tort of outrage (intentional infliction of emotional distress) requires the proof of three

22   elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional

**Christie Law Group, PLLC**
2100 Westlake Avenue N., Suite 206
Seattle, WA 98109
206-957-9669

1   distress, and (3) actual result to plaintiff of severe emotional distress.  *Kloepfel v. Bokor*, 149

2   Wn.2d 192, 195, 66 P.3d 630 (2003).  It is not enough that a defendant acted with a tortious or

3   criminal intent, or that he intended to inflict emotional distress, or even that he acted with malice.

4   *Grimsby v. Sampson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975).  Outrage must be predicated on

5   behavior that is "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible

6   bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

7   *Id.*  Whether conduct is sufficiently extreme to result in liability is a preliminary question for the

8   Court before a claim of outrage can be allowed to go to the jury.  *Pettis v. State*, 98 Wn. App. 553,

9   563, 990 P.2d 453 (1999).  Officer Johnson acted reasonably in the face of an imminent and very

10  serious threat.  His conduct cannot support an outrage claim against any defendant.

11  **J.       The Court Should Dismiss All Federal and State Law Claims Against Chief Armitage.**

12          To sustain a cause of action under § 1983 against Chief Armitage, plaintiffs must show (1)

13  they suffered a violation of their constitutional rights, and (2) the violation was proximately caused

14  by Chief Armitage, acting under color of law.  *See Parratt,* 451 U.S. at 535; *Crumpton*, 947 F.2d

15  at 1420; *Leer,* 844 F.2d at 634 (to state a § 1983 claim, a plaintiff must set forth specific facts as

16  to each individual defendant's conduct that proximately caused violation of rights); *Jones v.*

17  *Williams*, 297 F.3d 930, 936-37 (9th Cir. 2002) (integral participation or personal involvement is

18  required before an officer can be held liable under § 1983).  Plaintiffs do not assert that Chief

19  Armitage had any individual involvement or participation in the February 9, 2019 police pursuit

20  or shooting.  Instead, they allege that Chief Armitage failed to properly train and supervise Officer

21  Johnson, that he created policies and procedures that encouraged Officer Johnson to take

22  unconstitutional actions, that he failed to adequately investigate the shooting, and that he ratified

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 23

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Officer Johnson's conduct after the fact.  These allegations are simply an extension of plaintiffs'

2   *Monell* claim against the City of Roy.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (official-

3   capacity suits "generally represent only another way of pleading an action against an entity of

4   which an officer is an agent.")  Accordingly, the Court should dismiss plaintiffs' federal claims

5   asserted against Chief Armitage.

6           Under Washington law, an employer may be vicariously liable for the actions of its

7   employees.  *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997).  But Officer

8   Johnson is employed by the City, not Chief Armitage, a fact plaintiffs concede in their Complaint.

9   The Court should therefore dismiss any vicarious liability claims against Chief Armitage.

10  Additionally, plaintiffs' negligence claims based upon Chief Armitage's alleged failures are not

11  actionable.  Failure to train, supervise, and investigate claims are barred by the public duty

12  doctrine.  *See Osborn v. Mason County*, 157 Wn.2d 18, 27, 134 P.3d 197 (2006) (public entity

13  does not owe a duty of care when it owes a duty to the public in general); *Babcock v. Mason County*

14  *Fire Dist. No. 6.*, 144 Wn.2d 774, 785, 30 P.3d 1261 (2001); *Donohoe v. State*, 135 Wn. App. 824,

15  834, 142 P.3d 654 (2006); *Laymon v. Washington State Dep't of Natural Res.*, 99 Wn. App. 518,

16  530, 994 P.2d 232 (2000) (negligent investigation claims may not be brought against police

17  officers); *Escalante v. City of Tacoma*, No. C14-5774RBL, 2016 WL 7375301, at *8 (W.D. Wash.

18  Dec. 20, 2016) (city's duty to train its police officers is owed to public at large); *Shope v. City of*

19  *Lynnwood*, 2011 U.S. Dist. LEXIS 32069, 19-20 (W.D. Wa. 2011) ("[t]he duty of the City to hire,

20  train, retain, and supervise its officers is owed to the public at large, not to plaintiff individually.")

21          Moreover, negligent training/supervision claims require a plaintiff to show an employee

22  acted outside the scope of employment.  *Niece*, 131 Wn.2d at 48-51; *Briggs v. Nova Servs.*, 135

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1   Wn. App. 955, 966-67, 147 P.3d 616 (2006).  When an employer does not disclaim liability for

2   the acts of its employees, negligent training and supervision claims collapse into the direct tort

3   claims against the employer.  *Gilliam v. Dep't of Social & Health Servs.*, 89 Wn. App. 569, 584-

4   85, 950 P.2d 20 (1998); *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479-80, 271 P.3d 254

5   (2011).  Officer Johnson was undisputedly acting within the course and scope of his employment.

6                              VI.      **CONCLUSION**

7          For all of these reasons, the Court should dismiss plaintiffs' claims with prejudice.

8          DATED this 13th day of October, 2020.

9                                          CHRISTIE LAW GROUP, PLLC

10

11                                         By _____/s/ Ann E. Trivett_____
                                              ANN E. TRIVETT, WSBA #39228
12                                            Attorney for Defendants City Of Roy,
                                                  Chris Johnson, and Darwin Armitage
13                                            2100 Westlake Avenue North, Suite 206
                                              Seattle, WA  98109
14                                            Telephone:  (206) 957-9669
                                              Email: ann@christielawgroup.com

15

16

17

18

19

20

21

22

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (3:20-cv-05223-RBJ-MAT) - 25

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1

## CERTIFICATE OF SEVICE

2         I hereby certify that on October 13, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to the following:

3

DOUGLAS R. CLOUD, WSBA #13456

4                    Law Office of Douglas R. Cloud

1008 Yakima Avenue, Suite 202

5                       Tacoma, WA 98405

Telephone: 253-627-1505

6                    E-mail: drc@dcloudlaw.com

Attorney for Plaintiffs

7

CHRISTIE LAW GROUP, PLLC

8

9                    By _____/s/ Ann E. Trivett_____

ANN E. TRIVETT, WSBA #39228

10                       Attorney for Defendants City Of Roy,

Chris Johnson, and Darwin Armitage

11                    2100 Westlake Avenue North, Suite 206

Seattle, WA  98109

12                    Telephone:  (206) 957-9669

Email:  ann@christielawgroup.com

13

14

15

16

17

18

19

20

21

22