1

2

3

4

5

6

The Honorable Robert J. Bryan
The Honorable Mary Alice Theiler

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9

10

DAVID RICE AND ELIZABETH RICE,
individually and as a marital community; and
SETH DONAHUE, individually,

11

                                    Plaintiffs,

12

vs.

13

14

CITY OF ROY, a Washington municipality;
CHRIS JOHNSON, individually; and
DARWIN ARMITAGE, individually,

15

                                    Defendants.

16

**CASE NO.  3:20-cv-05223-RJB-MAT**

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
November 6, 2020

*ORAL ARGUMENT REQUESTED*

17

## I. <u>RELIEF REQUESTED</u>

18

        Plaintiffs, David Rice and Elizabeth Rice, individually and as a martial community, and Seth

19

Donahue, individually, by and through their attorney of record, Douglas R. Cloud, hereby submit

20

their response to Defendants' Motion for Summary Judgment and move the Court for an Order

21

Denying Defendants' Motion for Summary Judgment.

22

## II. <u>SUMMARY OF ARGUMENT</u>

23

        David Rice ("Rice") and Seth Donahue ("Donahue") were shot without warning in an

24

ambush set up by Officer Chris Johnson ("Johnson") of the Roy Police Department on a snowy night

25

on February 9, 2019 just south of the Roy City limits in unincorporated Pierce County, Washington.

26

Johnson had completely darkened his vehicle at the scene of the shooting, except for a blinding

spotlight he activated in the last moments before he shot Rice and Donahue.  Johnson turned his headlights off before he arrived at the scene of the shooting.

Johnson fired at least four shots at Rice and Donahue from a concealed, darkened location on the west side of the vehicle in which they were riding, a Polaris Razor, an off-road vehicle.  The Polaris was traveling approximately 8 mph when the shooting occurred.

Rice and Donahue had no idea or apprehension that Johnson was attempting to stop the Polaris, as he now claims.  Neither were aware of any attempt by Johnson to stop the Polaris at any time before the shooting.

A security video of Johnson's actions, before and after the shooting, recorded the events. Johnson shot into the Polaris from his position on the west side of the vehicle as it passed him. Johnson shot twice into the passenger side front windshield and twice into the passenger side window as the Polaris drove past his position.  The video appears to show Johnson running alongside of the vehicle before he slipped on the snow and fell backward as Rice turned the Polaris to the west onto 295th to escape from his unknown assailant.

Johnson was never in any danger.  He could have simply moved out of the way of the slow-moving Polaris.

There is no possible legal jurisdiction for Johnson's actions.  Had Johnson simply activated his emergency lights in time for Rice to see them and react, Rice would have stopped the Polaris without incident.[1]  Johnson's actions were fully ratified by the City of Roy after the shooting. Neither Rice or Donahue have been charged with any crime or traffic infraction for their actions.[2]

### III. <u>STATEMENT OF FACTS</u>

On February 9, 2019, at approximately 9:30 p.m., Rice was driving his 2013 Polaris Razor off road vehicle ("Polaris") southbound on seldom used railroad tracks running from Roy,

---

[1]  Declaration of Douglas R. Cloud in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Cloud Decl."), Ex. 3 - Deposition Transcript of Seth Donahue taken on August 13, 2020 ("Donahue Dep."), 78:25-79:25.

[2]  Declaration of Douglas R. Cloud in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Cloud Decl."), Ex. 4 - Deposition Transcript of David Rice taken on August 10, 2020 ("Rice Dep."), 112:1-5.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 2 OF 25**
**CASE NO. 3:20-cv-05223-RBJ-MAT**

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1  Washington, towards McKinley and Yelm.[3]  Rice was living in Roy with his wife, Elizabeth, at his

2  parent's home where he grew up.  Donahue lived at the same residence.  The residence was nearby.

3       When driving the Polaris earlier in the City of Roy, Rice drove at or under the speed limits

4  of 25 or 30 mph, depending upon which roadway they were traveling.[4]

5       There was no traffic and no people visible to Rice while he was operating his Polaris in and

6  around the City of Roy.[5]

7       Rice's Polaris had been modified.  He had enclosed the passenger compartment with a cab

8  that increased the noise from the Polaris such that it was not possible to hear any noise from outside

9  the Polaris over the noise of the engine and, when applied, the brakes.[6] Rice didn't stop the Polaris

10 after he was shot because he didn't know who shot him.[7]

11      Sitting next to the 47 years old Rice in the passenger seat was his 23 year old nephew,

12 Donahue.

13      As Rice and Donahue traveled south on the railroad tracks heading for Rice's home nearby,

14 they approached the intersection of the railroad tracks with 295th Street, a road running directly east

15 off of Highway 507.  As they approached the intersection, a blinding light suddenly appeared directly

16 in front of them.  Rice thought it might be an oncoming train.  He immediately let up on the gas

17 pedal, which caused the brakes on his Polaris to automatically apply and slow the vehicle, as a Jake

18 brake slows a logging truck. The Polaris made additional noise as the brakes automatically activated.

19 Rice did not vary his trajectory of travel.  He heard no verbal commands.  He did not see the

20 blackened patrol vehicle.[8]  Donahue did not see any person before he was shot.[9]

21      Rice had no time to react in the split second that elapsed from the time the spotlight cam on

22 and when he saw somebody on the tracks.[10]  Rice testified in his deposition and described in detail

23
24
25
26

[3] Cloud Decl., Ex. 4 - Rice Dep., 72:17-19.
[4] Cloud Decl., Ex. 4 - Rice Dep., 64:13-65:1.
[5] Cloud Decl., Ex. 4 - Rice Dep., 70:17-71:19.
[6] Cloud Decl., Ex. 4 - Rice Dep., 83:4-7.
[7] Cloud Decl., Ex. 4 - Rice Dep., 83:4-7.
[8] Cloud Decl., Ex. 4 - Rice Dep., 75:24-79:6.
[9] Cloud Decl., Ex. 3 - Donahue Dep., 79:23-24.
[10] Cloud Decl., Ex. 4 - Rice Dep., 78:24-79:6.

what transpired in the moments before and after the shooting[11] and stated that:

1.   The Polaris did not impact Johnson;

2.   Rice did not see a human figure until the moment shots were fired;[12]

3.   Rice could not turn off the tracks until he got to 295th because the tracks had a fall off into an 8 foot ditch until 295th; and

4.   Rice did not know why and who had shot him.

Without any warning from Johnson or his police vehicle, at least four shots from a handgun, were fired by Johnson. Johnson fired all four shots as the Polaris was passing by him in an attempt to kill Rice and Donahue.[13] An analysis of the trajectory of the four bullets that hit the Polaris by Matthew Noedel, an expert in firearms and crime scene analysis, is set forth in his declaration and attached report. Mr. Noedel concluded that all four shots that hit the Polaris where taken while Johnson was standing adjacent to the Polaris on the west of the railroad tracks as it passed by his location.[14] Mr. Noedel concluded that Johnson's contention that he fired the shots while riding on the Polaris's hood is contradicted by the physical evidence and the security videos. Accident reconstructionist, Craig Luker, makes the same conclusions.[15]

Police procedures expert and crime scene analyst, William Harmening, concurs with Craig Luker and Matthew Noedel.[16]

Johnson's testimony is blatantly contradicted by the security video and physical evidence. Johnson's testimony is contradicted his own statements at the scene wherein he told PCSO Lt. Stone he was not run over and sustained only a glancing blow.[17]

---

[11] Cloud Decl., Ex. 4 - Rice Dep., 75:24-79:21.
[12] Cloud Decl., Ex. 4 - Rice Dep., 76:4-9.
[13] Cloud Decl., Ex. 5 - Deposition Transcript of Darwin Armitage taken on October 21, 2020 ("Armitage Dep."), 190:10-14; and Declaration of William Harmening in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Harmening Decl."), Ex. 1, p. 8; and Declaration of Matthew Noedel in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Noedel Decl."), Ex. 1.
[14] Noedel Decl., Ex. 1, pp. 2-5.
[15] Declaration of Craig Luker in Support of Plaintiffs' Response to Defendants' Motion for Summary Judgment ("Luker Decl."), Ex. 1, pp. 11-14.
[16] Harmening Decl., Ex. 1, pp. 11-14.
[17] Cloud Decl., Ex. 6 - PCSO 000168.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 4 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

The security video shows that, shortly prior to the shooting, Johnson had driven his police vehicle eastbound on 295th with no emergency lights or siren activated. His headlights were turned off as he drove towards the railroad tracks on 295th. He then parked his completely blackened patrol vehicle facing eastbound at the intersection of the railroad tracks and 295th. Johnson had set up his ambush.

As Rice's Polaris approached 295th, Johnson activated his spotlight causing Rice to believe a train was approaching. Rice let up on the throttle, causing the brakes to automatically apply. Rice could not turn safely off the railroad tracks before the Polaris reached the intersection of 295th Street and the railroad tracks because of a steep, dangerous slope and drop off on either side of the raised railroad tracks as it approached 295th Street.

The Polaris had slowed to approximately 8 mph and had its brakes fully applied as it continued to slow as it was approaching the intersection. The two driver side wheels were between the railroad tracks. The two passenger side wheels were outside the westernmost tracks.[18] Accident reconstruction expert, Craig Luker, evaluated the physical evidence at the scene soon after the shooting. He concluded that Rice was correct and that the two wheels on the passenger side were outside the westernmost railroad track. Mr. Luker points to photographs of the Polaris's track marks in the snow to support his conclusions. Johnson was concealed in a darkened area away from the search light slightly to the west of the railroad tracks when he fired the shots.

Johnson discharged at least four bullets into the Polaris as it passed.[19] Rice was hit with two bullets, one which hit his right shoulder and one which hit his groin and exited through his left buttocks.[20]

Donahue was hit with one bullet that hit him in his left wrist.[21]

Rice was shot in the right shoulder and in the groin from the side of the vehicle.[22] His right

---

[18] Cloud Decl., Ex. 4 - Rice Dep., 74:25.
[19] Noedel Decl., Ex. 1, pp. 2-3; Luker Decl., Ex. 1, p. 2, 1st ¶; and Harmening Decl., Ex. 1, pp. 8-9.
[20] Cloud Decl., Ex. 4 - Rice Dep., 94:19-95:11.
[21] Noedel Decl., Ex. 1, p. 2.
[22] Noedel Decl., Ex. 1, pp. 3-5.

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    arm went numb.  He had no idea what had happened other than he had been shot.  He did not know

2    why he was shot.[23]

3          Donahue also knew he had been shot, but didn't know who had shot him or why he was

4    shot.[24]  After confirming they each had been shot, Donahue and Rice sat in shock and in silence as

5    they left the scene in the Polaris.  Both Rice and Donahue were in severe pain.  The Polaris went two

6    blocks west to Hwy 507.  It took a left and drove southbound on Hwy 507 several blocks towards

7    312th Street where Rice turned left.  Rice's left arm could not operate the steering wheel and the

8    Polaris spun out off 312th into the adjacent brush to the south of 312th.  Rice was on his way home

9    off 312th within feet of his driveway to seek medical assistance and safety.

10         Johnson's patrol vehicle then collided with the Polaris.  The patrol vehicle ended up facing

11   southbound on the west side of the northbound oriented Polaris.  At that point, Rice realized he had

12   been shot by a police officer.[25]

13         Johnson approached the Polaris with his gun drawn.  Johnson then ordered Donahue out of

14   the Polaris at gunpoint.  He ordered Donahue to lie down in the snow on the roadway.[26]

15         The first unit on the scene was Officer Tim Atkins of the Yelm Police Department.  Officer

16   Atkins was a personal friend of Johnson,  Shortly after Officer Atkins arrived, numerous officers

17   form the PCSO arrived, as did emergency medical personnel.

18         Rice was too injured to remove himself from the Polaris.  Four officers of the PCSO then

19   forcibly removed him from the Polaris despite his severe injuries.  Both Rice and Donahue were

20   transported to St. Joseph Medical Center ("SJMC").  Donahue sustained a gunshot wound to his left

21   wrist.  He was discharged from SJMC in the early morning hours of February 10, 2019.

22         Rice suffered life threatening injuries from his two gunshot wounds.  Rice's parents and

23   Donahue were told by hospital personnel that Rice might not survive his injuries during the early

24   morning hours of February 10, 2020.  Donahue and Rice's parents, David and Sandee Rice, were

25   _____
     [23] Cloud Decl., Ex. 4 - Rice Dep., 84:15-24.
     [24] Cloud Decl., Ex. 4 - Rice Dep., 83:19-20 and 84:6-8.
26   [25] Cloud Decl., Ex. 4 - Rice Dep., 75:15-19.
     [26] Cloud Decl., Ex. 4 - Rice Dep., 97:22-98:8.

PLAINTIFFS' RESPONSE TO DEFENDANTS'                          LAW OFFICE OF DOUGLAS R. CLOUD
MOTION FOR SUMMARY JUDGMENT - 6 OF 25                        1008 Yakima Avenue, Suite 202
CASE NO. 3:20-cv-05223-RBJ-MAT                               Tacoma, Washington 98405
                                                             Phone: 253-627-1505   Fax: 253-627-8376

given a chance to say their final goodbyes to Rice.[27]  Although Rice survived his wounds, he remains seriously disabled from his injuries.

Donahue denies Johnson was hit by the Polaris as he claims.[28]  Rice did not see Johnson and, after seeing the security video, he knows the Polaris did not impact Johnson.  Rice did not see any impact between the Polaris and Johnson.

**A.     The PCSO - Investigation is Not Independent.**

The criminal investigation by PCSO has not closed.  The investigation since its inception has not been an independent investigation as required by Washington State Law.[29]  The PCSO investigation was not independent because PCSO and the City of Roy have several written cooperation agreements resulting in the shared provision of police service in Roy, Washington between the City of Roy Police Department and the PCSO.[30]

From the outset of the so-called independent investigation by PCSO, all officers of the Roy Police Department, including Johnson and Roy Police Chief Darwin Armitage ("Armitage"), had unrestricted access to PCSO investigative reports as they were generated.[31]  It is obvious that Johnson had viewed the security video of the incident, which was obtained by PCSO officers the night of the shooting, before he gave a written statement through his attorney as to the circumstances of the shootings, which was dated January 14, 2019 "*sic*."  It is clear that Johnson had access to the entire PCSO investigation documentation and evidence from its inception enabling him to create with his attorney the carefully crafted and unsworn statement he gave to PCSO on February 14, 2019.  Roy Police Department officers continue to have access to the PCSO investigative documents.

A PCSO officer who reviewed the security video after the shooting also expressed skepticism in their written reports that Johnson had been injured by the Polaris.  He did not believe an impact occurred between the Polaris and Johnson.[32]

---

[27] Cloud Decl., Ex. 3 - Donahue Dep., 108:15-109:24.
[28] Cloud Decl., Ex. 3 - Donahue Dep., 79:25-80:17.
[29] Harmening Decl., Ex. 1, p. 18(3).
[30] Cloud Decl., Ex. 5 - Armitage Dep., 127:13-129:18.
[31] Cloud Decl., Ex. 5 - Armitage Dep., 251:9-252:10.
[32] Harmening Decl., Ex. 1, pp. 11-12.

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

The Rice family home sits on ten acres approximately a mile outside the city limits of Roy. Off Road vehicles, such as the Polaris, can be legally operated in that part of Pierce County.[33] Rice and Donahue had been operating Polaris type vehicles for many years in the same area they were shot and on the same railroad tracks without any incidents prior to February 9, 2019.  They would also drive on Rice's parent's property and adjacent private property to the north of the family home.

Use of ORV's in the area was common and other ORVs had been in use in and around the area in the same manner as the Polaris that was being operated by Rice on February 9, 2019.[34]

**B.    City of Roy Ratification and Monnell Liability.**

The City of Roy has fully ratified Johnson's actions.  Johnson was on leave only until the Thursday following the Saturday night shooting.  He was reinstated by the Roy Police Department at that time.  Johnson has not faced any disciplinary actions.

No internal investigation has ever been conducted by the City of Roy. Roy Police Department Chief Armitage has not investigated Johnson's actions in any way.[35]  Chief Armitage has never once, other than a brief conversation at the scene the night of the shooting, discussed the shooting with Johnson.  He has not forced Johnson to give a written statement regarding his actions.[36]  He has not forced Johnson to take a polygraph examination concerning his actions.[37]  He has not performed an interview or an investigation.[38]  His first action after learning of the shooting was to call and request the presence of the Roy City Attorney to assist in defending the City of Roy and Johnson.

The City of Roy released a press release on February 15, 2019, ratifying Johnson's actions and falsely claiming that the Polaris caused injuries to Johnson, including a head injury, which Johnson since has denied.[39]  The press release also falsely claimed that Johnson was hit twice by the Polaris.[40]

---

[33] Cloud Decl., Ex. 5 - Armitage Dep., 116:10-117:20.
[34] Cloud Decl., Ex. 4 - Rice Dep., 53:1-13.
[35] Harmening Decl., Ex. 1, pp. 14-19.
[36] Cloud Decl., Ex. 5 - Armitage Dep., 168:10-13.
[37] Cloud Decl., Ex. 5 - Armitage Dep., 168:14-20.
[38] Cloud Decl., Ex. 5 - Armitage Dep., 169:1-14.
[39] Cloud Decl., Ex. 8 - City of Roy Press Release: Officer Involved Shooting dated February 15, 2019.
[40] Cloud Decl., Ex. 8 - City of Roy Press Release: Officer Involved Shooting dated February 15, 2019.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 8 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1

**C.      Johnson Should Have Not Been Allowed to Become an Officer.**

Johnson obtained his position as a police officer at the City of Roy Police Department when he applied for a position being vacated by Tim Atkins, a personal friend of Johnsons who had left to take a position with the Yelm Police Department.  Johnson had no previous experience as a commissioned police officer.  No other candidates were ever interviewed or considered.[41]  He was hired by the City of Roy Police Department in 2016.[42]

In 2017, Johnson was sent to the Washington State Criminal Justice Training Center ("WSCJTC").  The City of Roy paid for his tuition.  Johnson received his full City of Roy salary while attending the WSCJTC.[43]  The program required 720 hours of class time.[44]

Johnson completed all but the last 2 or 3 days at the WSCJTC program when he was expelled by the senior administration at the WSCJTC.  He was expelled for at least two very serious violations of WSCJTC rules.  Johnson apparently drank so much alcohol the evening before he was expelled that he registered a measurable alcohol reading on a breath test machine the morning after.  He and others consumed alcohol in the parking lot of the WSCJTC and had been contacted by Normandy Park Police Officer in the early morning hours.  Johnson also stayed in another student's dorm room that night, which Johnson was not permitted to do by the WSCJTC.[45]  Cadets are only expelled from State Criminal Justice training Centers when they commit very serious violations.  Such expulsions are very rare.

Chief Armitage advocated after Johnson's expulsion to WSCJTC administrators for Johnson to return to the WSCJTC to finish his training where he left off when he was expelled.  His request was denied.  Johnson was ultimately allowed, however, to restart his training several months after his expulsion from the beginning of the 720 hours training course.[46]

Johnson was never disciplined for being expelled from the WSCJTC by Chief Armitage and

---

[41] Cloud Decl., Ex. 5 - Armitage Dep., 251:9-252:10.
[42] Cloud Decl., Ex. 5 - Armitage Dep., 23:21-24.
[43] Cloud Decl., Ex. 5 - Armitage Dep., 206:22-207:9.
[44] Cloud Decl., Ex. 5 - Armitage Dep., 75:22-25.
[45] Cloud Decl., Ex. 5 - Armitage Dep., 45:21-52:3.
[46] Cloud Decl., Ex. 5 - Armitage Dep., 37:10-38:12.

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1    the City of Roy Police Department despite the fact that another cadet from another agency was

2    terminated from his position as a commissioned police offer as a result of the same type of actions

3    for which Johnson was never even disciplined.[47]   He received his full City of Roy pay while

4    attending the WSCJTC both times.

**D.    Prior Instance of Excessive Force.**

6            Armitage was previously sued in 2017 in United States District Court for using excessive

7    force while he has been the Police Chief for the City of Roy.[48]   The defendants, City of Roy and

8    Armitage, were released when they paid $20,000.00 to settle the case.[49]

9            The City of Roy had two full time commissioned police officers, Armitage and Johnson, in

10   2019.

## IV.  STATEMENT OF ISSUES

12           **1.**       Have plaintiffs raised sufficient issues of material fact to establish a primae facie case

13   that Johnson used excessive force when he shot Rice and Donahue on February 9, 2019?

14           **2.**       Should the Defendants Motion for Summary Judgment be denied? [Yes]

## V.  EVIDENCE RELIED UPON

16           **1.**       The records and files herein;

17           **2.**       The Plaintiffs' Response to Defendants' Motion for Summary Judgment;

18           **3.**       Declaration of Douglas R. Cloud in Support of Plaintiffs' Responses to Defendants'

19   Motion for Summary Judgment, together with all attached exhibits;

20           **4.**       Declaration of Craig Luker in Support of Plaintiffs' Responses to Defendants' Motion

21   for Summary Judgment Motion for Summary Judgment, together with all attached exhibits;

22           **5.**       Declaration of Matthew Noedel in Support of Plaintiffs' Responses to Defendants'

23   Motion for Summary Judgment Motion for Summary Judgment, together with all attached exhibits;

24   and

25   ---

[47] Cloud Decl., Ex. 5 - Armitage Dep., 38:15-19.
[48] *See* United States District Court Case No. 3:19-CV-05107.
[49] Cloud Decl., Ex. 7, Settlement and Full Release entered into between the City of Roy and Darwin Armitage ("Settling Defendants") with Sasha Weber ("Plaintiff") relating to the United States District Court Case No. 3:19-CV-05107.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1    **6.**    Declaration of William Harmening in Support of Plaintiffs' Responses to Defendants'

2    Motion for Summary Judgment Motion for Summary Judgment, together with all attached exhibits.

## VI.  LEGAL AUTHORITY AND ARGUMENT

4    When a police officer asserts qualified immunity as a defense, a two-step analysis is required.

5    It must first be established that the facts taken in the light most favorable to the plaintiff show that

6    the officer's conduct violated a constitutional right. *Saucier v. Katx,* 533 U.S. 194, 201, 121 S. Ct.

7    2151, 150 L. Ed. 2d 272 (2001).  If the first step is met, the second step is to determine if the right

8    in question was a clearly established at the time of the officer's actions, such that any reasonably

9    well-trained officer would have known his conduct was unlawful. *Dist. of Columbia v. Wesby,* ___

10   U.S. ___, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018).

11   Whether a particular use of force violates the Fourth Amendment necessitates balancing "the

12   nature and quality of the individual's Fourth Amendment interests against the importance of the

13   governmental interests alleged to justify the intrusion." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.

14   Ct. 1694, 85 L. Ed. 2d 1 (1985).

15   In the present case, Johnson provides self-serving testimony that he tried to stop the Polaris

16   to investigate several possible traffic infractions and misdemeanors.  Johnson's claim that he had

17   probable cause to arrest Rice for a felony charge of eluding a pursuing police vehicle is without any

18   merit because a violation of the pursuit statute requires proof of a pursuing patrol vehicle with

19   emergency lights and siren activated.

20   A police officer may use deadly force to apprehend a suspect only if "the Officer has probable

21   cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to

22   others." *Garner, Id.,* at 471 U.S. at 11, 105 S. Ct. 1694.  A suspect may pose such a threat if "there

23   is probable cause to believe he has committed a crime involving the infliction or threatened infliction

24   of serious physical harm." *Garner, Id.,* at 471 U.S. at ex. 105 S. Ct. 1694.

25   The defendants cannot point to any credible evidence that Rice committed a crime involving

26   the infliction of, or threatened infliction of, serious physical harm.  The facts of the present case are

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 11 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

1    similar in many pertinent ways to the facts alleged by another police officer, who unsuccessfully

2    raised a qualified immunity defense, as set forth in the recent case of *Orn v. City of Tacoma,* 949

3    F.3d 116 (9th Cir. 2020).  If the court construes the facts in the present case in the light most

4    favorable to the nonmoving party, *Orn., Id.,* mandates a denial of the defendants' motion for

5    summary judgment.

6        Johnson's undisputed actions of darkening his vehicle, blinding Rice and Donahue with his

7    spotlight and concealing himself so he could not be seen make Johnson's actions a clearly

8    unconstitutional use of force.  Rice and Donahue were not made aware of Johnson's desire to stop

9    the Polaris and contact them because Johnson intentionally concealed himself and the presence of

10   his patrol vehicle.  The patrol vehicle was darkened except for the blinding spotlight that caused Rice

11   to fear an oncoming train.  Rice could not turn safely off the tracks until the Polaris could turn onto

12   295th Street.

13       Rice and Donahue had no knowledge or awareness that Johnson purportedly had, earlier in

14   the evening, attempted to signal the Polaris to stop.  They had not seen Johnson's patrol vehicle, his

15   emergency lights, headlights or heard his siren before being shot.

16       Police officers often have trouble getting driver's attention to stop as is noted in the Roy

17   Police Department Policy Manual.  In his deposition, Armitage testified that some drivers do not

18   notice patrol vehicle's emergency lights and sirens when activated to signal a driver to stop.[50]

19       Even if Rice and Donahue had known of Johnson's presence and intention to stop the Polaris,

20   Johnson's use of force against Rice and Donahue was excessive because Johnson was never in

21   imminent danger of severe harm.  His claim of imminent danger is contradicted by the security video

22   and the trajectory analysis by crime scene analysis, accident reconstruction and the speed of the

23   Polaris, as well as his own statement at the scene.[51]

24       In deciding a Motion for Summary Judgment based upon a Qualified Immunity defense, a

25   court must construe the facts in the light most favorable to the plaintiff.  *Scott v. Harris*, 550 U.S.

26   [50] Cloud Decl., Ex. 5 - Armitage Dep., 131:3-132:7.
     [51] Luker Decl., Ex. 1, pp. 11-14; Harmening Decl., Ex. 1, pp. 11-15; and Cloud Decl., Ex. 2, .mp4 of security video.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 12 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 68 (2007).  Unless this court concludes that Rice and Donahue's version of the events are "blatantly contradicted by the records, so that no reasonable jury" could find Rice and Donahue's version credible, the disputed facts in the present case establish issues of material fact.  No such blatantly contradictory evidence exists to cast doubt upon Rice and Donahue's testimony.

A reasonable jury cannot, however, find Johnson's self-serving version of the events to be credible because it is blatantly contradicted by the security video and the physical and forensic evidence from the Polaris, which establishes that Johnson's claim that he was somehow impacted by the Polaris is false.

If Johnson was at any risk of danger, he could have completely avoided the danger by simply stepping away from the Polaris's path if, in fact, an impact was imminent.  Evidence that Johnson was never in any danger that he could not have avoided is captured by the security video.

A.    **Johnson Was Not Involved in a Pursuit at the Time of the Shooting.**

Johnson, if he was involved in a pursuit at all, had clearly ended the pursuit prior to setting up his ambush of Rice and Donahue.  Johnson's patrol vehicle, as it drove east on 295th Street to the railroad tracks, was not displaying any emergency lights prior to Johnson parking the vehicle.  The vehicle's headlights were then turned off.  The siren was not operating.  The lack of training of Johnson is evident by the shocking nature of the shooting.

As the Polaris approached, Johnson's patrol vehicle was parked and unlighted except for the spotlight activated at the last second as the Polaris approached, blinding Rice and Donahue's vision.  Johnson had parked his patrol vehicle at the location of the shooting with no headlights, emergency lights or siren activated.  His intention to blind Rice and Donahue and ambush them is obvious from the security video.  Had Johnson wanted to alert Rice and Donahue to his presence, the headlights, emergency lights and siren of the patrol vehicle would have all been activated. Johnson's actions, regardless of intent or motive, were objectively unreasonable as a matter of law.

In *Estate of Simpson v. Yellow Stone County*, 229 F.Supp. 30, 1992 (Mont. 2017), the court

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 13 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1  held as a *matter of law* on similar facts that two County Sheriff's Deputies actions in fatally shooting

2  the driver of a motor vehicle that the deputies believed to be stolen violated the suspect's Fourth

3  Amendment rights.  The deputies had parked their patrol vehicle in the middle of a rural, snow-

4  covered road.  No emergency lights or siren were activated.  The suspect driver did not drive his

5  vehicle at the deputies.  The driver was not an immediate threat to the deputies.  The crime that the

6  deputies were investigating was possession of a stolen vehicle with a value less than $1,000.00.  A

7  balancing of the claimed justification for the shootings against the minor crimes or infractions

8  alleged by Johnson leads to the same conclusion.

9  **B.     Johnson Did Not Reasonably Fear He Would Be Harmed by the Polaris.**

10  Johnson falsely claims that he was impacted by the Polaris and that he reasonably feared for

11  his safety.  Crime scenes, trajectory analysis and accident reconstruction testimony establish the

12  contrary.[52]  Whether or not Johnson was impacted by the Polaris, however, is not relevant to the

13  resolution of the issue because neither Rice or Donahue had any notice or awareness that a police

14  officer was trying to stop the Polaris.

15  Johnson was never in imminent danger of serious injury.  Rice could not have intended to

16  hit a person he could neither see nor hear.  He cold not otherwise have known that Johnson was

17  seeking to stop the Polaris.  Rice was not aware that Johnson had purportedly pursued him and

18  signaled him to stop earlier in the evening.

19  Even if he was impacted by the Polaris, Johnson could not claim he reasonably feared for his

20  safety because the Polaris did not change its course or trajectory.  The Polaris was slowing from a

21  speed of 8 mph and Johnson could have easily avoided any impact or danger by stepping away from

22  the Polaris' course of travel.  Johnson's claimed injuries cannot be considered serious.

23  A moving vehicle that is braking and slowing from 8 mph and that could only safely proceed

24  straight until it arrived at a safe area to pull over, in this case 295th Street, did not pose a threat of

25  serious physical harm to anyone.

26
---
[52] Luker Decl., Ex. 1, pp. 11-15.

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 14 OF 25**
**CASE NO. 3:20-cv-05223-RBJ-MAT**

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

Johnson would not have placed himself in front of the Polaris as he claims if he felt he was in harms way.  In fact, Johnson's claims are false.  Johnson was located on the west side of the railroad tracks and the Polaris, as it was traveling on the railroad tracks, towards 295th. This is established by the trajectory analysis of the four bullets that pierced the Polaris.[53]  Johnson clearly did not reasonably apprehend any risk of harm "because he could have avoided any risk of injury by simply stepping to the side." *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 146, 147 (9th Cir. 1996).

Police procedures expert and forensic investigator, William Harmening, has reviewed Johnson's unsworn written statement dated January 14, 2019 (sic) and his deposition testimony regarding the shootings and Johnson's claim that he was impacted by the that he was impacted by the Polaris.

Mr. Harmening explains the implausibility of Johnson's statements regarding the shootings and his supposed fear of serious injury as follows:

> Johnson has attempted to portray with his testimony a lethal threat where no threat existed. While he obviously intended for Rice to see the spotlight from his squad, he did not intend for Rice to see him, and took steps to hide his location. He did not use his flashlight, nor did he activate the ballistic light on his firearm. He purposely placed himself between the spotlight and the Polaris which would have made it difficult, if not impossible for Rice to see him. He then fired his weapon four times as the Polaris passed him by at a slow rate of speed. Johnson never explains how it is physically possible to be dragged by such a vehicle. He does not testify that part of his gear was stuck, and in fact testifies that he continued to shoot to prevent that from happening.9 It is reasonable to conclude that his description is not physically possible. And finally, throughout his testimony, Johnson states that he fired because the Polaris struck him. That alone, even if it were true, is not sufficient cause for using deadly force. By then it is too late to change the vehicle's path of travel by shooting the driver.[54]

Mr. Harmening points out that Johnson's lack of concern that he was shooting at the passenger, Donahue, is indicative of a lack of training and violates Roy Police Department's policy. He writes:

> One final and important point relates to Seth Donahue. During his testimony, Johnson admitted that he knew there was a passenger in the Polaris, and further

---

[53] Noedel Decl., Ex. 1, P. 4-5; and Harmening Decl., Ex. 1, pp. 8-9.
[54] Harmening Decl., Ex. 1, p. 14.

admitted to firing his weapon in the direction of the passenger, though he stated that he never intended to hit Donahue. The existence of a passenger is just one more reason why Johnson should never have fired his weapon at all.  All four shots violated his training and RPD policy. It is for a jury to decide if his actions violated Rice and Donahue's Constitutional rights.[55]

**C.     The Polaris Posed No Threat to Others.**

Johnson cannot reasonably argue that the Polaris presented a risk of harm to others.  No other persons were present.  The shootings occurred in a rural area covered in snow with no other traffic or people present or in the vicinity.  Rice and Donahue had no idea they were ever purportedly engaged in a pursuit initiated by Johnson.  Even had they so realized, any pursuit had clearly been terminated as they approached 295th Street heading to their home less than a mile away on a snowy night with no one else outside in the vicinity except the concealed Johnson, as well as Rice and Donahue.

**D.     Rice and Donahue's Right to Be Free from Excessive Force Was Clearly Established on February 9, 2019.**

In *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 146, 147 (9th Cir. 1996), it was held under facts similar to those in the present case that the officer involved could have avoided any risk of injury "by simply stepping to the side."  The use of force reviewed by the court in *Acosta, Id.,* was found to be obviously unreasonable, as it is in the present case. *See* also *Adams v. Speers,* 473 F.3d 989 (2007); *Williams v. Strickland*, 917 F.3d 763 (4th Cir. 2019); *Orn v. Tacoma,* 949 F.3d 1167 (9th Cir. 2020); and *Estate of Simpson v. Yellowstone County, supra.*

*Tennessee v. Garner,* 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985), held that an officer who employs deadly force against a fleeing suspect without reason to believe that the suspect is armed or otherwise poses no risk of physical harm is not entitled to qualified immunity.

**E.     The Claimed Traffic Violations Cited by the Defendants Cannot Justify the Use of Deadly Force.**

The defendants' claim that Rice committed serious crimes that justified Johnson's shooting of Rice and Donahue.  The defendants' citation to RCW 9A.52.080 is to Second Degree Criminal

---

[55] Harmening Decl., Ex. 1, pp. 14-15.

1   Trespass, a misdemeanor.  The defendants do not identify any injured party complaining of, or

2   injured, by a trespass.  There were no signs on the railroad tracks forbidding their use by off road

3   vehicles.  Rice and Donahue and other ORV owners living in the Roy area had operated their ORV's

4   on those railroad tracks for years.  Rice has used these tracks to drive on for decades and his use had

5   arguably ripened into a prescriptive easement.

6           The defendants also cite to RCW 46.09.450, which is not a criminal nor traffic statute at all.

7           An "attempt to elude" requires knowledge that there was a "Pursuing police vehicle."  *See*

8   *State v. Slayton*, 39 Wn.App. 46, 691 P.2d 596 (1984).  *State v. Mather*, 28 Wn.App. 700, 626 P.2d

9   44 (1981).  The attempt to elude must be done willingly or knowingly.  *State v. Flora,* 160 Wn.App.

10  549, 554, 249 P.3d 188 (2011).  Rice did not drive recklessly as the vehicle was traveling at 8 mph

11  and continuing to slow at the time of the shooting.

12          The defendants also claim that Johnson had probable cause to believe Rice had violated

13  RCW 46.09.480.  the statute prohibits operation "of a non-highway vehicle in such a way as to

14  endanger human life."  No human life was in danger as a result of Rice's actions at or near the time

15  he was shot.  The defendants' claim that RCW 46.09.480, a gross misdemeanor, justifies the risk of

16  taking two human lives contradicts the Roy Police Department's own written policy.  No human

17  lives were in danger as a result of Rice's operation of the Polaris.

18          Likewise, Johnson's claim that the shooting was justified by RCW 46.61.024 is completely

19  contradicted by the statute.  *State v. Slayton supra.* Johnson had used neither his siren or his

20  emergency lights or even his headlights or flashlight to signal Rice to stop.  Johnson's claimed voice

21  command from a concealed position could not be heard, if it occurred at all, over the noise of the

22  Polaris.

23          RCW 46.61.024 requires the State establish that the driver "wilfully failed to immediately

24  bring his vehicle to a stop" and that he drove the vehicle in a reckless manner.  These two elements,

25  that Rice willfully was eluding a pursuit by an officer and was driving recklessly cannot establish

26  probable cause under the facts of the present case.  The Polaris was being operated at a slow speed

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 17 OF 25**
**CASE NO. 3:20-cv-05223-RBJ-MAT**

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1  and had no safe area in which to turn off its course until it reached 295th Street.  It was braking and

2  continued straight as it was the only safe route.  The Polaris was not being operated recklessly.

3       The defendants' argue a traffic infraction, RCW 46.61.022, failure to stop, justifies shooting

4  Rice and Donahue.  A traffic infraction cannot justify a seizure utilizing deadly force. **(CITE)**

5       Finally, the defendants' claim that Johnson had probable cause at the time of the shooting

6  to believe Rice had been driving while intoxicated is supported by no evidence in the record.  No

7  such evidence was known to Johnson when he fired the shots.  RCW 46.61.5249, Negligent driving

8  in the first degree, cannot be established for the same reason.  Johnson had no reason to believe that

9  Rice may have been driving while intoxicated when he fired the shots.

10       RCW 46.61.525 prohibits negligent driving in the second degree.  It is a traffic infraction

11  with a maximum penalty of a $250 fine.  It provides no justification for Johnson's actions.

12  **F.**  **Mr. Rice Was Not Engaged in a Felony.**

13       Johnson was not operating a pursuing police vehicle at the time he shot Rice and Donahue.

14  RCW 46.61.024 has several elements in it that cannot be established in regard to Rice.  It has to be

15  established that Rice "attempted to elude a pursuing police vehicle" and drove his vehicle in a

16  reckless manner.

17       The defendants' claim that Rice violated RCW 46.61.024 is contradicted by the plain

18  meaning of the statute.  There was no pursuit.  He was not fleeing.  He was not driving recklessly.

19  There was no pursuing patrol vehicle.  *State v. Slayton supra. See* also WPIC 94.02.

20  **G.**  **That Plaintiff's State Law Claim Are Not Banned by RCW 4.24.420.**

21       The defendants rely upon RCW 4.24.420 by claiming if applies to bar Rice and Donahue

22  state law claims.  As stated above, the defendants cannot rely upon RCW 46.61.024 as felony

23  committed by Rice.  The defendants cannot establish that Rice "willfully failed or refused to bring

24  his vehicle to a stop after being signaled to stop."  RCW 4.61.024, WPIC 94.02.

25  //

26  //

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 18 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

**H.    The Claim That Mr. Donahue Somehow Was an Accomplice to a Felony must Likewise Fail.**

There was no pursuit at the time Rice and Donahue were shot.  It had ended some time before the shooting.  There is no evidence of a felonious pursuit.

**I.    The Court Should Not Dismiss the Plaintiffs' State Law Battery Claim.**

The facts alleged by the Plaintiffs provide sufficient evidence that Johnson intended to harm or kill Rice and Donahue.  There is sufficient evidence to allow the battery claim to proceed to trial.

**J.    The Plaintiffs Outrage Claim is Adequately Supported by Fails**.

The plaintiffs' version of the facts of their shooting constitute an adequately pled claim for the tort of outrage.

Johnson set up an ambush and attempted to kill Rice and Donahue.  This is an adequate factual predicate for the tort of outrage.  Both Rice and Johnson have suffered from damages as a result.

Johnson gave Rice and Donahue no warning and no opportunity to stop before they were shot.

A reasonable jury could find Johnson's actions meet the elements of the tort of outrage.

**K.    The City of Roy Has Liability for its Actions Pursuant to 42 U.S.C. § 1983.**

To prevail on a municipal liability claim, a plaintiff must show:

1.    Plaintiff's constitutional rights were violated;

2.    The municipality had customs or policies in place at the time that amounted to deliberate indifference, and

3.    Those customs or policies were the moving force behind the violation of rights.

*Estate of Amos ex. rel. Amos v. City of Page,* 257 F.3d 1086, 1094 (9th Cir. 2001).

A plaintiff may establish municipal liability under § 1983 by establishing that the constitutional violation was caused by a failure to train employees sufficiently, which showing depends on three elements: (1) the existing training program must be inadequate in relation to the

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 19 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT**

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505   Fax: 253-627-8376

tasks the particular officers must perform; (2) the officials must have been deliberately indifferent to the rights of persons with whom the police come into contact; and (3) the inadequacy of the training must be shown to have actually caused the deprivation of the alleged constitutional right. 42 U.S.C.A. § 1983, *Boarman v. County of Sacramento*, 55 F.Supp.3d 1271, 89 Fed. R. Serv.3d 1591 (E.D. Cal. 2014).

For a municipality to be liable pursuant to 42 U.S.C. § 1983, it must be established that the wrongful act complained of was somehow caused by the municipality.  *Monell v. Dep.'t of Soc. Servs., of New York,* 436 U.S. 658, 641-695.

Police procedures expert, William Harmening, has indicated that Officer Johnson's unconstitutional use of deadly force is directly related to Armitage's and the City of Roy's failures in selecting, disciplining, training and supervision of Johnson.[56]

City of Roy and Armitage failed to adequately train Johnson in the use of force, including the constitutional limitations on the use of force.

Harmening has testified that it has long been known in the law enforcement agencies that shooting into a moving vehicle is seldom a wise decision.[57]  It has never been demonstrated that shooting into a moving vehicle is an effective means of stopping a vehicle's movement fast enough to stop an immediate threat.[58] The policy of the Roy Police Department on February 9, 2019, was very restrictive.

Armitage's failure to perform any investigation whatsoever is evidence of his and the Roy Police Department's approval for members of his department to ignore its policies, including those on the use of lethal force and shooting into a vehicle.  Mr. Harmening summarized these failures as follows:

> Throughout the record there is evidence of a tacit approval by Armitage for members of his department to ignore their own policies. I personally have never seen a case where an officer, after using deadly force against two individuals, fails or refuses to complete the following:

[56] Harmening Decl., Ex. 1, pp. 14-21.
[57] Harmening Decl., Ex. 1, p. 9.
[58] Harmening Decl., Ex. 1, p. 10-11.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 20 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1. Johnson never wrote a report
2. Johnson never completed a use-of-force report
3. Johnson refused to provide a public safety walk-thru
4. Johnson refused to provide a statement to investigators
5. There was no internal affairs investigation completed
6. There was no *Garrity*-protected interview completed.[59]

Plaintiff maintains that the City of Roy should be liable because 1) Johnson's actions were ratified by an official policy maker of the City of Roy, and/or 2) The City of Roy and Armitage failed to properly train its deputies on the constitutional use of lethal force, and/or 3) Johnson was acting pursuant to a longstanding policies, practices or customs that allowed Roy Police Officers to disregard written policies in violating Rice's and Donahue's rights.

**L.    Ratification.**

Isolated constitutional violations may give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Armitage had the final authority on all Roy Police Department matters of policy, operations and discipline.[60]   To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239 (citing *Praprotnik*, 485 U.S. at 127). Whether an agent of a municipality possesses final policymaking authority is a question of state law. *Praprotnik*, 485 U.S. at 124. Whether that agent has ratified the actions of a subordinate is a question of fact. *Iopa*, 176 F.3d at 1238-39.

Armitage possesses final policy making authority for the City of Roy Police Department regarding law enforcement policies.[61]   Johnson's actions were ratified by Armitage and the City of Roy.[62]

The City of Roy has fully ratified Johnson's action through the actions of their agent, Armitage. Armitage has upheld Johnson's actions.  Ratification can also be evidence of municipal

---

[59] Harmening Decl., Ex. 1, pp. 16-17.
[60] Cloud Decl., Ex. 9 - City of Roy Police Department Procedures Manual, 1-202.01 policy (ROY 000023).
[61] Cloud Decl., Ex. 9 - City of Roy Police Department Procedures Mnaual, 1-202.01 policy (ROY 000023).
[62] Cloud Decl., Ex. 8 - City of Roy Press Release: Officer Involved Shooting dated February 15, 2019.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 21 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1  policies that lead to constitutional violations.

2  **M.    Armitage is Liable for His Own Acts.**

3    A supervisor such as Armitage is liable in his individual capacity for the constitutional

4  violations of Johnson because he set in motion a series of acts by others, which he knew or

5  reasonably should have known would cause a constitutional injury. *Larez v. City of Los Angeles*,

6  946 F. 2d 630, (9th Circ. 1991).

7    Supervising liability is imposed against a supervisory official in his individual capacity for

8  his "own culpable action in the training, supervision or control of his subordinates, and for his

9  acquiescence in the constitutional deprivation of which the complaint is made or for conduct that

10  showed a reckless indifference to the rights of others.

11    A municipal official liability is distinguished by the source of the constitutional harm; it must

12  be attributable to official policy or custom to the extent that the terms "policy" and custom" imply

13  something beyond a single decision, official liability may be imposed where a first-time decision to

14  adopt a particular course of action is directed by a governmentally authorized decision maker. *Larez*

15  *v. City of Los Angeles*, 946 F.2d 630 (9th Circ. 1991), citing *Pembaur v. City of Cincinnati*, 475 S.Ct.

16  1292, 1299, 84 L.Ed. 452, (1986).

17  **N.    Official Policy or Longstanding Custom or Practice.**

18    Armitage's and City of Roy's decision to ratify Johnson's conduct is clearly a dereliction of

19  his and the City of Roy's official policies.  This is the natural result of the City of Roy's longstanding

20  customs or practices to not enforce Roy Police Department policies.  It is the natural result of never

21  disciplining Johnson for being expelled from the WSCJTC.

22    A municipality may be held liable "when execution of a government's policies or customs,

23  whether made by lawmakers or by those whose acts or failure to act may be fairly said to represent

24  official policy, inflicts the injury." *Monell, supra,* 436 U.S. at 694.

25    Armitage and the City of Roy have created an investigation policy that has not been observed.

26  That policy was the moving force of the constitutional violations, violation of State law and Roy

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 22 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone: 253-627-1505  Fax: 253-627-8376

1 Police Department's policy in the present case that is clearly biased toward protecting officers from

2 responsibility for their unconstitutional use of force.  Armitage has created an atmosphere in the Roy

3 Police Department that allows his policies to be ignored and deliberately violated without

4 consequence resulting in the constitutional violations in the present case.

**O.  Roy Policies and Armitage's Negligence and Reckless Indifference Was the Moving Force of Johnson's Unreasonable Use of Force.**

Johnson should have been <u>disqualified from being hired</u>, and terminated from his employment when he was expelled from the WCJTC for one or more serious violations.[63]  Johnson's explanation for his expulsion is of questionable veracity and most likely conceals more serious conduct leading to the expulsion than Johnson admits.[64]

**P.  Armitage and Roy Police Department's Supervision Failures and Lack of Training Was the Moving Force That Led to Johnson's Constitutional Violation.**

Armitage adopted a tacit policy that Johnson would not be disciplined while employed by the Roy Police Department for any violation of policy or training.  Johnson had learned when he wasn't disciplined for his expulsion from the WSCJTC that he could disregard Roy Police Department policies without consequences.  Armitage and Roy Police Department provided inadequate training in the use of force.  Armitage does not require that the policies be read.  Armitage's failure to supervise, train and discipline Johnson was the moving force behind Johnson's unconstitutional use of force.

//
//
//
//
//
//
//

---

[63] Harmening Decl., Ex. 1, pp. 15-16.
[64] Harmening Decl., Ex. 1, pp. 15-16.

**LAW OFFICE OF DOUGLAS R. CLOUD**
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505  Fax:  253-627-8376

1

## VII.   CONCLUSION

2      The Defendants' Motion for Summary Judgment should be denied in their entirety.  If the

3  court concludes that plaintiffs' complaint regarding municipal liability and Armitage's liability are

4  deficient, the plaintiffs request leave to amend the complaint.

5      **DATED** this 2nd day of November, 2020.

6                                                 **LAW OFFICE OF DOUGLAS R. CLOUD**

7

8                                                 /s/ Douglas R. Cloud
                                                  **DOUGLAS R. CLOUD, WSBA #13456**
9                                                 Law Office of Douglas R. Cloud
                                                  1008 Yakima Avenue, Suite 202
10                                                Tacoma, WA 98405
                                                  Telephone: 253-627-1505
11                                                Fax: 253-627-8376
                                                  E-mail:  drc@dcloudlaw.com
12                                                Attorney for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT - 24 OF 25**
**CASE NO. 3:20-cv-05223-RBJ-MAT**

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376

1

## CERTIFICATE OF SERVICE

2

The undersigned declares as follows:

3

1.      I am over the age of 21 and not a party to this action.

4

2.      I am an employee of Douglas R. Cloud, Attorney at Law, Attorney for Plaintiffs.

3.      On this day, I certify that I filed the foregoing with the Clerk of the Court using the
CM/ECF system, which will send notification of such filing to the following, and, in addition, I
forwarded a true and correct copy of this document to the counsel of record for the defendants in the
following manner:

5

6

7

8

9

10

11

12

| Counsel for Defendants:<br><br>Ann R. Trivett, Esq., WSBA #39228<br>Robert L Christie, Esq.,WSBA #10895<br>Salim D. Lewis, Esq., WSBA #52660<br>**CHRISTIE LAW GROUP, PLLC**<br>2100 Westlake Ave N, Ste 206<br>Seattle, WA 98109<br>P: 206-957-9669<br>F: 206-352-7875<br>Email: ann@christielawgroup.com; bob@christielawgroup.com;<br>salim@christielawgroup.com | ☐ Messenger<br>☐ US Mail<br>☐ Facsimile<br>■ Email<br>■ CM/ECF |
| --- | --- |

13

14

I certify under penalty of perjury under the laws of the State of Washington that the foregoing
is true and correct.

15

**DATED** at Tacoma, Washington this 2nd day of November, 2020.

16

17

/s/ Carrie L. Marsh

18

**CARRIE L. MARSH**
Law Office of Douglas R. Cloud
1008 Yakima Avenue, Suite 202
Tacoma, WA 98405
Telephone: 253-627-1505
Fax: 253-627-8376
E-mail:  cmarsh@dcloudlaw.com

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 25 OF 25
CASE NO. 3:20-cv-05223-RBJ-MAT

LAW OFFICE OF DOUGLAS R. CLOUD
1008 Yakima Avenue, Suite 202
Tacoma, Washington 98405
Phone:  253-627-1505   Fax:  253-627-8376