1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID RICE and ELIZABETH RICE,
individually and as a marital community;
and SETH DONAHUE, individually,

                                Plaintiffs,

        v.

CITY OF ROY, a Washington
municipality; CHRIS JOHNSON,
individually; and DARWIN ARMITAGE,
individually,

                                Defendants.

CASE NO. 20-5223 RJB

ORDER ON DEFENDANTS'
PARTIAL MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Partial Motion for Summary Judgment
(Dkt. 49) and Defendants' motion to strike (Dkt. 90).  The Court has considered the pleadings
filed regarding the motion and the file herein.

        This case arises from City of Roy Police Officer Chris Johnson's shooting of Plaintiffs David
Rice and Seth Donahue just south of the Roy, Washington city limits on February 9, 2019.  Dkt.
1.  The Defendants move for summary judgment on the Plaintiffs' federal and state claims for

"unreasonable seizure/false arrest" asserted against Officer Johnson, their federal claims against the City of Roy, and all claims asserted against the then City of Roy Chief of Police Darwin Armitage.  Dkt. 49.  For the reasons provided below, the motion to strike (Dkt. 90) should be granted, in part, and denied, in part and the motion for partial summary judgment (Dkt. 49) should be granted, in part, and denied, in part.

## I.     RELEVANT FACTS AND PROCEDURAL HISTORY

*Shooting Incident and Aftermath*

On February 9, 2019, the City of Roy received an unusual amount of snow for the area.  Dkt. 82.  Plaintiffs Rice and his nephew, Donahue, began consuming alcohol around noon and continued throughout that evening.  Dkts. 82-1, at 5 and 50-1, at 157.  They decided to go out, and took a 2013 Polaris moving utility vehicle ("UTV"), with Rice driving and Donahue in the passenger seat.  Dkt. 50-1, at 99.  They went to a store to buy beer, then to the Roy Tavern, and then to Walt's Pub, and drank more beer at the bars.  Dkts. 82-1, at 5 and 50-1, at 101-102, 158.  Rice acknowledges that he may have been "buzzed" at the time of the shooting.  Dkt. 82-1, at 5.

Rice asserts that he was only traveling 25-30 miles an hour while in Roy and did not exceed the speed limit.  Dkt. 82-1, at 3.  Rice acknowledges that he may have failed to come to a complete stop at a stop sign while in Roy.  Dkt. 82-1, at 4.  He claims they did not see any traffic or people out in town.  *Id.*  Rice and Donahue claim that they did not hear police sirens or police lights before the confrontation with Officer Johnson.  Dkts. 82-1, at 3 and 82-2, at 2. Donahue acknowledges seeing a police vehicle parked at the library, but it looked to him as though the officer had gone home because of the weather.  Dkt. 82-2, at 3.

After leaving Walt's Pub, Rice and Donahue started home, but decided to go back to the gas station store for cigarettes, but did not stop because they realized it was closed.  Dkt. 50-1, at

104-105.  They were on the highway (the gas station is on the corner of 3rd Street and the highway).  Dkt. 50-1, at 105.  They then took a "back street," the name of which Rice does not recall, and "whipped around a bunch in there in the snow."  Dkt. 50-1, at 106.  According to Rice, they were "spinning around in town" driving over several streets.  Dkt. 50-1, at 111; 124-127.  In between the library and the elementary school, they were "drifting," which meant that they "were in two-wheel drive at the time and had that throttle pinned, and [they] were going sideways."  Dkt. 50-1, at 159 and 165.

Officer Johnson states that after observing the UTV's driving, he pursued the UTV with his lights and sirens on around town.  Dkt. 50-1, at 73.  He was trying to stop them because they were driving a recklessly and for operating an off-road vehicle on the main roads that did not have any mirrors, a license plate, or registration on the vehicle.  Dkt. 50-1, at 74.  Rice and Donahue did not stop.  Dkt. 23-1, at 3-4.  There were some cars on the roads, but traffic was light.  Dkt. 23-1, at 4.

Rice and Donahue left the main roads and returned to the railroad tracks, traveling down them to head home.  Dkt. 82-1, at 2.  They were going around 35-40 miles an hour (or maybe less) (Dkt. 82-1, at 11) and had one front tire inside the tracks (Dkt. 82-2, at 9) (according the Donahue), Rice indicates that both driver's side tires where inside the tracks (Dkt. 50-1, at 112).  They had two standard lights and two "super bright" lights on as the traveled down the tracks.  Dkt. 50-1, at 114. They state that it was very loud and very rough inside the UTV on the railroad tracks.  Dkt. 50-1, at 168. Donahue was holding beer cans which were "splashing" around.  Dkt. 50-1, at 168-169.  Donahue states that all the windows in the UTV were fogged up, it was snowing, and that they couldn't see.  Dkt. 50-1, at 186.

Officer Johnson parked his police car across, or next to, the railroad tracks without its lights

on. Dkts. 82-1, at 10 and 50-1, at 75-76.  Officer Johnson states that he placed his vehicle there because Rice and Donahue had slipped away from him on the main roads and he knew they were headed for the tracks, so he thought he'd head them off.  Dkt. 50-1, at 73.  Officer Johnson asserts that he turned on his spotlight so that they could see him and his uniform, but forgot to turn on his emergency lights.  Dkt. 50-1, at 75-76.  He was holding his gun and flashlight.  Dkt. 23-1, at 4.  Officer Johnson states that he yelled "stop police" three times as they came down the railroad tracks at him, but the UTV did not stop or slow.  Dkt. 23-1, at 5.  According to Officer Johnson, he realized that the UTV was headed right toward him and he was moving quickly off the tracks "when the right front side of the suspect vehicle hit [him]."  Dkt. 23-1, at 5. Officer Johnson states that while stuck on the front of the vehicle he fired into it "while [his] feet were entirely off the ground."  Dkt. 23-1, at 5.

From Rice's perspective, "all of the sudden there was a bright light, like a train light . . . so [he] let off the gas . . . [they] know there's somebody on the tracks . . . and then all of a sudden there was shots fired."  Dkt. 82-1, at 7.  Rice later acknowledged that he didn't know if Officer Johnson was on the tracks or beside the tracks.  Dkt. 101-50-1, at 138.  Rice was shot in the shoulder and groin (Dkt. 82-1, at 11) and Donahue was shot in the wrist (Dkt. 82-1, at 7).

Officer Johnson states that he slid off the UTV, was hit by the right rear tire, which was hanging off the west side of the tracks, and fell.  Dkt. 23-1, at 5.  Officer Johnson states that he was later diagnosed with torn muscles in his back, a chest contusion, and sprained knee.  Dkt. 23-1, at 7.

Rice states that he isn't sure, but that he doesn't think they hit the person on the tracks.  Dkt. 82-1, at 9.  Donahue states he didn't think that they hit Officer Johnson.  Dkt. 50-1, at 176.  The parties submitted a video of the shooting.  See Dkt. 22.  It is of extraordinarily bad quality and

1   does not assist in determining what happened for purposes of this motion.  Officer Johnson states

2   that while he knew that under City of Roy Police policy he wasn't supposed to shoot into a

3   moving vehicle, he did so here because he was afraid for his life.  Dkt. 82-3, at 6.

4   In any event, Rice states that he did not know who fired the shots, so he "went out on the

5   highway and tried to get home," which was on their right, to escape.  Dkt. 82-1, at 7.  While on

6   the tracks, he did not turn right "when he wanted to" because there was an eight-foot ditch on

7   that side.  Dkt. 82-1, at 8.  Rice and Donahue later "slid out going into the road that leads into . . .

8   [Rice's] parent's place."  Dkt. 82-1, at 7.  At that point, Officer Johnson's police vehicle came in

9   and "pinned" them in.  Dkt. 82-1, at 7.

10   Officer Johnson ordered them out of the UTV.  Dkt. 50-1, at 130.  Donahue complied, but

11   Rice was "pinned in" by the police vehicle and due to his injuries could not get over the console.

12   *Id.*  Officers from other law enforcement agencies arrived fairly soon thereafter and took over the

13   scene.  *Id.*  Neither Rice nor Donahue were arrested.  Dkt. 50-1, at 132-134.  They were taken to

14   the hospital to receive medical care.  *Id.*

15   The Mayor of Roy, Rawlin (Anthony) McDaniel, states that he had been out with Officer

16   Johnson checking on elderly residents of Roy due to the weather earlier that evening.  Dkt. 82-6,

17   at 8.  He states that Officer Johnson dropped him off at home and he got into the shower.  Dkt.

18   82-6, at 5.  Mayor McDaniel states that his wife told him that there was a pursuit underway; he

19   denies seeing any part of the pursuit.  Dkt. 82-6, at 5.

20   Mayor McDaniel called Chief Armitage and told him that there was a pursuit underway

21   with Officer Johnson involved.  Dkt. 82-6, at 4.  Chief Armitage states that it was policy for him

22   (as supervisor) to monitor pursuits, if possible, but he was not doing so in this case.  Dkt. 82-5, at

23   3.  (There were only two full time police officers in Roy – Chief Armitage and Officer Johnson;

24

Chief Armitage's wife, Sonia Gomez-Armitage helped out a little as a volunteer reserve officer. Dkts. 82-5, at 2 and 50-1, at 4.  She is now the Chief of Police in Roy (Dkt. 66)).  After the shooting, Mayor McDaniel states that he called Chief Armitage to inform him, and Chief Armitage indicated that he was "in route."  Dkt. 82-6, at 6.

The Pierce County, Washington Sheriff's Office was called in to investigate the incident in accordance with a prior agreement between it and the City of Roy.  Dkt. 50-1, at 6.  A criminal investigation by the Pierce County Sheriff's Office is pending, but it is not clear who may be subject to criminal charges, if any.  Dkt. 50-1, at 6.  According to Chief Armitage, he has not started an internal investigation in an effort not to interfere with the ongoing criminal investigation by the Pierce County Sheriff's Office.  Dkt. 50-1, at 32 and 39-48.

A press release was sent by the City of Roy about the incident.  *See* Dkt. 82-6, at 9. Mayor McDaniel states that the press release was written "by the attorneys . . . [a]nd [he] was told to send that via fax to the neighboring news outlets."  Dkt. 82-6, at 9.  The press release was not authored by the City of Roy, but by a private law firm.  Dkt. 82-6, at 11. Chief Armitage denies talking to the media about this incident.  Dkt. 82-5, at 5.

Chief Armitage made the decision to reinstate Officer Johnson a few weeks after the incident based on the psychological evaluation Officer Johnson received.  Dkt. 50-1, at 24-25; 29.  Officer Johnson has not yet been disciplined.  Dkt. 50-1, at 27-28.

*Officer Johnson's Training and Employment History*

Officer Johnson was hired as a City of Roy police officer in 2016.  Dkt. 50-1, at 69. Before joining the Roy police department, Officer Johnson was a police cadet for the Puyallup police department and Algona police department, a member of the Army National Guard, and a reserve officer and corrections officer for the City of Fife.  Dkt. 23.  He received training at the

City of Fife, including firearms training, defensive tactics, and use of force training.  Dkt. 50-1, at 70.

Chief Armitage and Officer Tillman Atkins (who Johnson replaced) trained Officer Johnson after he was hired full time, before he went to the Washington State Criminal Justice Training Commission's basic law enforcement academy ("police academy").  Dkt. 82-6, at 2. Officer Johnson rode along in the patrol vehicles, was introduced to the CAD system, the City of Roy, and its layout.  Dkt. 50-1, at 9.  This training was for around a month.  *Id.*  Before and after he went to the police academy, Chief Armitage states that he and Officer Johnson had conversations about the use of force and pursuits, but that they were not documented.  Dkt. 50-1, at 11-12.  Officer Johnson received a copy of the police department's written policies (Dkt. 50-1, at 34-35) and Chief Armitage saw Officer Johnson reading them (Dkt. 50-1, at 35-37).

Police academy training was around 720 hours at that time, which included training in criminal law, criminal procedure, patrol procedure, crisis management, defensive and control tactics, emergency vehicle operations, firearms, and mock scenes.  Dkt. 52.

Officer Johnson acknowledges that he was suspended from the police academy the first time that he went through it because he went out drinking with some of the other attendees a few nights before graduation.  Dkt. 82-3, at 9.  Unbeknownst to him, the driver of the vehicle they returned to the academy in the next day had been drinking.  *Id.*  Officer Johnson was asked to take a breath test and he blew a .001, which indicates a trace of alcohol.  *Id.*  Although he only had two days left to graduate, Officer Johnson had to repeat the entire six-month academy training.  Dkt. 82-3, at 10.  The City of Roy sponsored him at the academy both in 2017 and 2018.  Dkt. 82-3, at 10. Mayor McDaniel states that "after speaking with the council and speaking with Officer Johnson and Chief Armitage, [they] felt like Officer Chris Johnson

1  deserved a second chance." Dkt. 82-6, at 14.  Chief Armitage states that he considered firing

2  Officer Johnson, but decided against it.  Dkt. 50-1, at 13-14.  Officer Johnson was not disciplined

3  for this incident by the City of Roy.  Dkt. 50-1, at 16.

4       The State of Washington did not require that Officer Johnson have any additional training

5  in 2018 (having just graduated from the police academy) and his training requirements began

6  again in January of 2019.  Dkt. 82-3, at 11.

7                                        *Plaintiffs Claims*

8       Plaintiffs Rice and Donahue make federal claims for violation of their rights under the

9  "Fourth Amendment and Fourteenth Amendment . . . to be free from unreasonable seizures,

10  arrest without probable cause, and the excessive use of force."  Dkt. 1.  They make state law

11  claims for negligence, false arrest, battery, and emotional distress.  Plaintiff Elizabeth Rice

12  makes claims for violation of her Fourteenth Amendment rights and loss of consortium.  *Id.*  The

13  Plaintiffs seek damages, attorneys' fees and costs.  *Id.*

14                              **II.    DISCUSSION**

15       This opinion will first address the motion to strike and then the motion for partial summary

16  judgment.

17  **A.  MOTION TO STRIKE**

18       The Defendants move to strike the May 7, 2021 and June 21, 2021 reports of the Plaintiffs'

19  police practices expert Neil Low (Dkts. 83-1, 83-2, and 83-3).  Dkt. 90.  The Plaintiffs filed a

20  surreply to respond to the motion to strike.  Dkt. 100.

21       The Defendants' motion to strike Neil Low's June 21, 2021 reports as untimely should be

22  granted.  The supplemental reports were sent after the June 18, 2021 discovery deadline.

23  Further, a majority of the reports should be stricken as irrelevant, pursuant to Fed. R. Evid. 401,

24

and as unrelated to Low's purported area of expertise under Fed. R. Evid. 702, because the reports are rife with Low's assessment of witness credibility.  For the purposes of this motion only, Low's reports should be stricken.

Further, the Defendants' motion to strike portions of Plaintiffs' police practices expert William Harmening's report (Dkt. 30-1, at 16-17) should be granted.  The Defendants point to the portion of the report in which Mr. Harmening opines that Officer Johnson was not kicked out the police academy the first time because he had a BAC of .001, but that it had to be over something more significant. Dkt. 30-1, at 16-17.  He speculates on several possibilities, from Officer Johnson being armed when officers stopped the car the night before to the possibility that Officer Johnson and the others may have visited a strip club the night before and a complaint being asserted against them.  Dkt. 30-1, at 16-17.  His opinions on this issue are speculative and not within the scope of his testimony as an expert on police practices.  For the purpose of this motion only, the portion of the report discussing possible reasons why Officer Johnson had to repeat his academy training (Dkt. 30-1, at 16-17) should be stricken.

## B.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at, which is a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. 242).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**C.  CLAIMS UNDER 42 U.S.C. § 1983 GENERALLY**

In order to state a claim under 42 U.S.C. § 1983, a complaint must allege that (1) the conduct complained of was committed by a person acting under color of state law, and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present.  *Haygood v. Younger*, 769 F.2d 1350,

1    1354 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986).

2        In order to state a claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual

3    bases upon which he claims each defendant is liable.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092

4    (9th Cir. 1980).  Vague and conclusory allegations of official participation in a civil rights

5    violation is not sufficient to support a claim under § 1983.  *Ivey v. Board of Regents*, 673 F.2d

6    266 (9th Cir. 1982).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the

7    basis of supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*,

8    436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

9    **D.  QUALIFIED IMMUNITY – GENERALLY**

10       Defendants in a Section 1983 action are entitled to qualified immunity from damages for

11   civil liability if their conduct does not violate clearly established statutory or constitutional rights

12   of which a reasonable person would have known.  *Pearson v. Callahan*, 129 S. Ct. 808, 815

13   (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

14       In analyzing a qualified immunity defense, the Court must determine: (1) whether a

15   constitutional right would have been violated on the facts alleged, taken in the light most

16   favorable to the party asserting the injury; and (2) whether the right was clearly established when

17   viewed in the specific context of the case.  *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001).  "The

18   relevant dispositive inquiry in determining whether a right is clearly established is whether it

19   would be clear to a reasonable officer that his conduct was unlawful in the situation he

20   confronted." *Id*.  While the sequence set forth in *Saucier* is often appropriate, it should no longer

21   be regarded as mandatory. *Pearson*, at 811.

22   **E.  FOURTH AMENDMENT – UNREASONABLE SEIZURE CLAIMS**

23   The Plaintiffs Rice and Donahue assert Fourth Amendment claims for violation of their

24

rights against unreasonable seizure, arrest without probable cause, and excessive force against all Defendants.  The Defendants move for dismissal of the Plaintiffs' federal "unreasonable seizure/false arrest claims." Dkt. 49.  The Defendants do not move to dismiss the Fourth Amendment excessive force claim asserted against Officer Johnson.  Dkt. 90.  The Defendants argue for dismissal of the Plaintiff's "§1983 false arrest claim," maintaining that Rice and Donahue weren't seized because they weren't arrested and Officer Johnson had probable cause (or at least reasonable suspicion) to attempt to stop the UTV and investigate possible criminal activity.  *Id.*  The Defendants move to dismiss all Fourth Amendment claims asserted against Chief Armitage. *Id.*

    1.   Fourth Amendment Claim for "False Arrest" under § 1983 Asserted Against all Defendants, including Officer Johnson

To the extent that the Defendants move for dismissal of the Plaintiffs' Fourth Amendment claims based on the <u>fact</u> of their seizure (§ 1983 "false arrest" claims), as opposed to the <u>manner</u> of their seizure, the Defendants' motion should be granted and the claims dismissed against all Defendants.

"Unreasonable searches and seizures" are prohibited under the Fourth Amendment. Generally, Fourth Amendment seizures are reasonable if supported by probable cause.  *See Bailey v. U.S.,* 133 S.Ct. 1031, 1037 (2013).

At a minimum, Plaintiffs Rice and Donahue were seized when Officer Johnson stopped the UTV.  *Brendlin v. California*, 551 U.S. 249, 255 (2007)(holding that for purposes of the Fourth Amendment, an officer seizes everyone in the vehicle during a traffic stop, not just the driver).

Even considering the facts in a light most favorable to the Plaintiffs, Officer Johnson had probable cause to seize them for violation of various traffic laws and for driving on the railroad tracks.  *See e.g.* RCW 46.61.524 and 525 (negligent driving), RCW 46.09.480 (operating a non-

highway vehicle in a manner as to endanger others), RCW 46.61.500 (reckless driving) and RCW 46.09.450 (concerning unauthorized vehicles on railroad tracks). Probable cause "arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed ... an offense." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010). Officer Johnson watched their driving and saw them on the railroad tracks. He had probable cause to seize them.

To the extent that they assert a claims for false arrest pursuant to § 1983, the Plaintiffs' claims should be dismissed. The Plaintiffs have failed to point to issues of fact precluding summary judgment on that claim and the Defendants are entitled to a judgment as a matter of law. This opinion need not address Officer Johnson's claim for qualified immunity on the Plaintiffs' for false arrest pursuant to § 1983 because no violation of the Fourth Amendment occurred based on the fact of the seizure. To the extent that the Plaintiffs' claims for violation of their Fourth Amendment rights are based on the <u>manner</u> of the seizure – the shooting – those claims remain.

2. <u>Fourth Amendment Claims Against Chief Armitage, in his Individual Capacity</u>

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)(*internal citations and quotation marks omitted*).

"A supervisor may be liable in his individual capacity under § 1983 for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

1  "The requisite causal connection can be established by setting in motion a series of acts by others

2  or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or

3  reasonably should have known would cause others to inflict a constitutional injury." *Id.*

4         The Plaintiffs maintain that Chief Armitage was personally involved in the constitutional

5  deprivation because he had the power to intervene and order Officer Johnson to terminate the

6  pursuit.  Dkt. 81, at 12.  Chief Armitage testified that he was not monitoring the pursuit.

7  Although the Plaintiff maintains that Chief Armitage was lying in his deposition when he stated

8  that he wasn't monitoring the pursuit, they fail to point to any credible evidence to support this

9  assertion.  They note that Mayor McDaniel called Chief Armitage and let him know that Officer

10 Johnson was involved in a pursuit.  While it is reasonable to infer that Chief Armitage began to

11 listen to the police radio at that point, there is no information about when that call occurred or

12 whether there was any opportunity to intervene.  "[O]fficers can be held liable for failing to

13 intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271,

14 1289–90 (9th Cir. 2000), *as amended* (Oct. 31, 2000).

15        Further, Plaintiffs do not claim damages from being pursued.  They claim that they weren't

16 even aware that they were being pursued by Officer Johnson until after he shot them.  They

17 claim their rights were violated when Officer Johnson shot them.  "[A] plaintiff must show the

18 supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Starr,* at

19 1207.  The Plaintiffs fail to point to facts to which would show that Chief Armitage's failure to

20 intervene was the proximate cause of their constitutional injuries.

21        To the extent that the Plaintiffs make a claim against Chief Armitage for violation of their

22 Fourth Amendment rights for his retention of Johnson after he was forced to repeat his police

23 academy training, or his failure to train or supervise Officer Johnson, their claims should be

24

1   dismissed.  They have failed to point to facts which support a causal connection between Chief

2   Armitage's retention decision, or training and supervision of Officer Johnson, and Officer

3   Johnson's shooting of the Plaintiffs.  They do not point to any credible evidence that he knew or

4   should have known that the decision to retain Officer Johnson, his training (or the training that

5   Officer Johnson had just received from the police academy (twice) or from his four years as a

6   reserve officer with the City of Fife police department and other agencies) or supervision of

7   Officer Johnson was so insufficient such that it would cause Officer Johnson to violate the

8   Plaintiffs' rights in the manner they allege that he did.  There is no showing that Chief Armitage

9   showed "a reckless or callous indifference" to the Plaintiffs' rights" *Rodriguez*, at 798.  There is

10  no evidence that Chief Armitage had knowledge of Officer Johnson's decision to shoot before it

11  occurred, and so there is no evidence of "acquiescence" in the alleged constitutional deprivation.

12  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018)(noting that to establish liability for a

13  supervisor under and acquiescence theory, a plaintiff must show that the supervisor "knew of

14  unconstitutional conditions and culpable actions of his subordinates but failed to act").  To the

15  extent that the Plaintiffs assert a Fourth Amendment claim against Chief Armitage, in his

16  individual capacity, that claim should be dismissed.

17      **F.  FOURTEENTH AMENDMENT CLAIMS**

18      To the extent that Plaintiffs Rice and Donahue assert claims under the Fourteenth

19  Amendment, their claims should be dismissed against all Defendants.  Where, as here, their

20  claims are covered by a more specific constitutional amendment (like the Fourth Amendment),

21  those claims must be asserted under that amendment, and not under the Fourteenth Amendment's

22  due process clause.  *Graham v. Connor,* 490 U.S. 386 (1989).

23

24

To the extent that Plaintiff Elizabeth Rice, Plaintiff David Rice's wife, and Plaintiff Seth Donahue's aunt, is asserting a claim for violation of her Fourteenth Amendment right to family unity, the claim should be dismissed against all Defendants.  "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062 (9th Cir. 2013); *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018).  Neither David Rice or Seth Donahue are Elizabeth Rice's children.  She fails to point to any binding authority that a wife may recover for the loss of unity with her husband or nephew under the Fourteenth Amendment, particularly as here, where they did not die from their injuries.  Plaintiff Elizabeth Rice's claim for loss of consortium is addressed below.

## G.  § 1983 CLAIM AGAINST THE CITY OF ROY

In order to make claim for §1983 liability against the City of Roy, the Plaintiffs must show that: (1) they were deprived of a constitutional right; (2) Roy had a policy; (3) the policy amounted to a deliberate indifference to their constitutional rights; and (4) the policy was the moving force behind the constitutional violation.  *Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001)(*internal quotations omitted*).

> There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)(*internal quotation marks and citations omitted*).  "Where a § 1983 plaintiff can establish that the facts available to [city]

ORDER ON DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT - 16

1   policymakers put them on actual or constructive notice that the particular omission is

2   substantially certain to result in the violation of the constitutional rights of their citizens, the

3   dictates of *Monell* are satisfied." *Id.*

4       The Plaintiffs appear to assert § 1983 claims against Roy based on its alleged improper

5   hiring, retention, failure to supervise, failure to train, and its' ratification of Officer Johnson's

6   actions.  Dkt. 81.  Each will be considered below.

7                    *1.   Improper Hiring/Retention of Officer Johnson*

8       To the extent the Plaintiffs base their Fourth Amendment violation claims against the

9   City of Roy for the decision to hire and retain Officer Johnson after he was kicked out of the

10  police academy, those claims should be dismissed.  They fail to point to sufficient evidence to

11  defeat summary judgment that the City officials were deliberately indifferent to their rights; that

12  is that they "disregarded a known or obvious consequence" of the decision to hire or retain

13  Officer Johnson.  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410–11

14  (1997).  Moreover, they do not show any causal connection between this specific constitutional

15  violation and the decision to hire him or allow him to stay.  *Flores v. City of Los Angeles*, 758

16  F.3d 1154, 1157–58 (9th Cir. 2014).  The motion should be granted and these claims should be

17  dismissed.

18             *2.   Policy of Failure to Supervise or Inadequate Supervision*

19      To the extent that the Plaintiffs base their Fourth Amendment violation claims against the

20  City of Roy on a failure to supervise, the motion for summary judgment on this claim should be

21  granted.  "A failure to supervise that is sufficiently inadequate may amount to deliberate

22  indifference."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

23

24

1   The Plaintiffs do not point to sufficient evidence supporting their failure to supervise

2   claim.  They fail to show that City of Roy officials (including Chief Armitage) were deliberately

3   indifferent to the likelihood that the level of supervision given to Officer Johnson would likely

4   result in a constitutional violation.  *See Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).

5   These claims should be dismissed.

6   *3.   Policy of Failure to Train*

7   To the extent that the Plaintiffs base their Fourth Amendment violation claims against

8   Roy on a failure to train, the motion for summary judgment on this claim should be granted.  "A

9   pattern of similar constitutional violations by untrained employees is ordinarily necessary to

10   demonstrate deliberate indifference for purposes of failure to train."  *Connick v. Thompson*, 563

11   U.S. 51, 62 (2011).  The Plaintiffs fail to point to any evidence that there was a "pattern of

12   similar constitutional violations" in the City of Roy before the incident involving Officer

13   Johnson.  The single situation the Plaintiffs point to involved an allegation that cuffs were too

14   tight, the suspect's arm was wrenched, and they injured their foot while being dragged to the

15   squad car; it did not involve Officer Johnson, the use of deadly force, or a remotely similar

16   situation.

17   "[I]n a narrow range of circumstances, a pattern of similar violations might not be

18   necessary to show deliberate indifference."  *Connick*, at 63 (*internal quotation marks and*

19   *citations omitted*).  "[T]he unconstitutional consequences of failing to train could be so patently

20   obvious that a [city] could be liable under § 1983 without proof of a pre-existing pattern of

21   violations."  *Connick*, at 64 (*internal quotation marks and citations omitted*).  The Plaintiffs must

22   show that Roy "was deliberately indifferent to the need to train subordinates, and the lack of

23   training actually caused the constitutional harm or deprivation of rights."  *Id*.

24

1    Viewing the evidence in a light most favorable to the Plaintiffs, there are no issues of fact

2    as to whether Roy's failure to provide additional training was "so patently obvious" as to result

3    in liability under §1983.  They have not pointed to issues of fact, that if believed, show that the

4    City "could have prevented the violation with an appropriate policy."  *Tsao, at* 1143 (*internal*

5    *quotation marks and citations omitted*). The Plaintiffs have not pointed to issues of fact that, if

6    credited, show that Roy's failure to train Officer Johnson caused a violation of Plaintiffs'

7    constitutional rights.  This claim should be dismissed.

8                                    *4.  Ratification*

9    The "ratification test is satisfied if a plaintiff can prove that an official with final policy-

10   making authority ratified a subordinate's decision or action and the basis for it." *Trevino v.*

11   *Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (*internal citations omitted*).  "Ratification requires,

12   among other things, knowledge of the alleged constitutional violation."  *Christie v. Iopa*, 176

13   F.3d 1231, 1239 (9th Cir. 1999).

14   To the extent that the Plaintiffs base their Fourth Amendment violation claims on the City's

15   ratification of Office Johnson's actions, the motion for summary judgment on those claims

16   should be denied.  There are issues of fact as to whether the City of Roy officials knew of Officer

17   Johnson's alleged use of force and ratified his reasons for doing so.

18                      *5.  Conclusion of §1983 Claims against the City of Roy*

19   The Defendants' motion for summary judgment on the Plaintiffs' Fourth Amendment claims,

20   against the City of Roy based on its hiring, retaining, supervision or training of Officer Johnson

21   should be granted and the claims should be dismissed.  The Defendants' motion for summary

22   judgment on the Plaintiffs' Fourth Amendment claim for ratification should be denied.  The

23   claim for ratification remains.

24

**H.  STATE LAW CLAIMS**

The Plaintiffs assert claims for false arrest, negligence, battery, emotional distress, and Plaintiff Elizabeth Rice makes a claim for loss of consortium.  The Defendants move to dismiss the false arrest claim against all Defendants, and move to dismiss all additional state law claims asserted against Chief Armitage.

**False Arrest against all Defendants**.  "A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person. The gist of false arrest is the unlawful violation of a person's right of personal liberty." *Youker v. Douglas Cty*., 162 Wn. App. 448, 465 (2011).  Probable cause is a complete defense to a claim for false arrest. *Id.*

The Defendants' motion for summary judgment on the Plaintiffs' state law claim for false arrest should be granted and the claim dismissed.  To the extent that Plaintiffs Rice and Donahue were "restrained," (parties do not dispute that the two were never placed under arrest), Officer Johnson had probable cause to stop them.  Again, this order should not be construed as a finding that the way he stopped them was appropriate; only that the stop itself was not impermissible.

**Negligence against Chief Armitage**. In order to make a negligence claim, a Washington plaintiff must show "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879 (2021).  While Chief Armitage had a duty to them as a police officer to discharge his duties reasonably (*Mancini,* at 879), and they maintain that his retention of Officer Johnson and his failure to properly supervise and train Officer Johnson was a breach of Chief Armitage's duties, they fail to demonstrate that their injures were proximately caused by his alleged breaches.

1   **Battery, Emotional Distress and Loss of Consortium claims against Chief Armitage.**

2   While under Washington law an employer may be vicariously liable for the action of its

3   employees, it is undisputed that Chief Armitage is not Officer Johnson's employer, but merely

4   his supervisor.  The City of Roy is Officer Johnson's employer.  The Plaintiffs fail to point to

5   any evidence which would support finding that Chief Armitage committed a battery, caused

6   emotional distress or is responsible for Plaintiff Elizabeth Rice's loss of consortium with her

7   husband.  Those claims asserted against Chief Armitage should be dismissed.

8   **I.   OTHER MATTERS**

9   At times, which claim the Plaintiffs are making against which Defendant is less than clear.

10   Accordingly, in the draft pretrial order, the Plaintiffs should specify, with particularly, which

11   claim they are asserting against which of the Defendants.

12   **III.   ORDER**

13   Therefore, it is hereby **ORDERED** that:

14   • Defendants' motion to strike (Dkt. 90) **IS GRANTED** as stated herein; and

15   • Defendants' Motion for Summary Judgment (Dkt. 49) **IS**

16       o **DENIED** as to the Fourth Amendment ratification claims against the City

17          of Roy;

18       o **GRANTED** as to the Plaintiffs' federal claims as follows: the Fourth

19          Amendment "false arrest" against all Defendants, all Fourteenth

20          Amendment claims, all federal law claims asserted against Chief

21          Armitage, all federal claims asserted against the City of Roy except the

22          Fourth Amendment ratification claim.  Those claims **ARE DISMISSED**;

23          and

24

1

2

3
- o **GRANTED** as to the Plaintiffs' state law claims as follows: for false arrest and all remaining state law claims against Chief Armitage.  Those claims **ARE DISMISSED**.

4

5
The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

6
Dated this 7th day of July, 2021.

7

8

9
ROBERT J. BRYAN
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24